[Civ. No. 25276.   First Dist., Div. One.   Apr. 23, 1969.]

MARY VALDEZ et al., Plaintiffs and Appellants, v. FEDERAL MUTUAL INSURANCE COMPANY, Defendant and Respondent.

Forrest G. Winningham for Plaintiffs and Appellants.

George W. Bonney for Defendant and Respondent.

SIMS, J.—Plaintiff, individually as a named insured and policy-holder, and as guardian ad litem of the incompetent widow and three minor surviving children of her deceased son, has appealed from a judgment in an action for declaratory relief which adjudged that the defendant insurer has no legal obligation to defend or pay any claims for damages alleged to be due to the plaintiffs by reason of the death of the named insured's son.

The son was a resident of the named insured's household at the time he was killed in a collision between a motorcycle he was operating and an uninsured motor vehicle. Admittedly, under the terms of the policy and the applicable statute,[1] his heirs would be insured for all sums within the policy limits which they would be legally entitled to recover for his wrong-

---

[1]Insurance Code section 11580.2 provided and provides in pertinent part: "(a) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. *The insurer and any named insured may by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply.* . . . as used in (a) above the term 'insured' means the named insured and the spouse of the named insured and *relatives of either while residents of the same household while occupants of a motor vehicle or otherwise,* heirs and any other person while in or upon or entering into or alighting from an insured motor vehicle and any person with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which the policy provisions or endorsement apply; . . ." (Italics added.)

ful death from the owner or operator of the uninsured motor vehicle, unless such coverage had been deleted in the manner provided by law. ■■■ The controversy involves the scope of an endorsement entitled "Exclusion of Named Driver," which reads: "It is agreed that such insurance as is afforded by this policy does not apply with respect to any claim arising from accidents which occur while any automobile is being operated by: SAMUEL SANCHEZ."

It is concluded that the endorsement did not serve to limit the coverage under the uninsured motorist part of the policy. It is therefore unnecessary to determine whether the word "automobile" as used in the endorsement includes a motorcycle.

The action was tried upon an agreed statement of facts which was embodied in the pretrial order. In addition to what has been related above, the facts show that at the time of the accident the motorcycle which the decedent was operating was registered to his mother, and was owned by either the decedent or his mother. At the time of the accident there was no uninsured motorist's coverage attributable to the motorcycle because the decedent, who carried liability insurance which covered the operation of the motorcycle, had voluntarily waived it in writing.

The policy involved in this action has been issued to the mother and described two automobiles owned by her. The record shows that this policy, a family automobile policy, had been renewed semiannually or annually since October 20, 1959 when its term, including uninsured motorist's coverage for which a separate premium was charged, first began. The endorsement quoted above bears an effective date of November 14, 1966. It was signed by the mother, and was countersigned by a representative of the insurer on November 21, 1966. The accident occurred on March 6, 1967.

■■■ "Insurance Code section 11580.2 is a part of a pattern of statutes which are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal. 2d 423, 434 . . .) Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own. [Citations.]" (*Katz* v. *American Motorist Ins. Co.* (1966) 244 Cal.App.2d 886, 890-891 [53 Cal.Rptr. 669]. See also, *Mission Ins. Co.* v. *Brown*

(1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275];
*Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d
210, 212 [58 Cal.Rptr. 243]; *Hanover Ins. Co.* v. *Carroll*
(1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275];
*Mills* v. *Farmers Ins. Exchange* (1964) 231 Cal.App.2d 124,
128 [41 Cal.Rptr. 650]; and *Hendricks* v. *Meritplan Ins. Co.*
(1962) 205 Cal.App.2d 133, 136 [22 Cal.Rptr. 682].)

█ It is established, as a corollary to the rule of liberal
construction to promote the objectives of the Legislature, that
any exception or exclusion must be strictly construed. In *Mission Ins. Co.* v. *Brown, supra,* the court stated: "The Legislature, by providing that the liability imposed by the statute
can be avoided only by means of an agreement in writing,
signed by the insurer and the insured, deleting the provision
for uninsured motorist coverage, clearly showed an intent that
there be no 'fine print,' unilateral waiver or limitation of the
requirement." (63 Cal.2d at p. 510. See also, *Utah Home Fire
Ins. Co.* v. *McCarty* (1968) 266 Cal.App.2d 892, 894 [72
Cal.Rptr. 460]; and *Hendricks* v. *Meritplan Ins. Co., supra,*
205 Cal.App.2d 133, 139.) Accordingly, although the courts
have upheld agreements to delete the statutory provisions
when executed in compliance with the statutory formalities
(see *Holland* v. *Universal Underwriters Ins. Co.* (1969) 270
Cal.App.2d 417, 419-421 [75 Cal.Rptr. 669]; *Myers* v. *National Auto. & Cas. Ins. Co.* (1967) 252 Cal.App.2d 599,
603 [60 Cal.Rptr. 743]; and *Weatherford* v. *Northwestern etc.
Ins. Co.* (1966) 239 Cal.App.2d 567, 569-572 [49 Cal.Rptr.
22]), they have struck down attempts to delete the coverage
where the policy and related documents are ambiguous and
uncertain and fail to show a clear intent to delete such provisions. (See *Allstate Ins. Co.* v. *Dean* (1969) 269 Cal.App.2d
1, 3-4 [76 Cal.Rptr. 543]; and *Utah Home Fire Ins. Co.* v.
*McCarty, supra,* 266 Cal.App.2d 892, 894-895.)

In *Hendricks* v. *Meritplan Ins. Co., supra,* the statutory
provisions then in effect (Ins. Code, § 11580.2, as added by
Stats. 1959, ch. 817, § 1, p. 2835) extended uninsured motor
vehicle insurance to ". . . the named insured and any other
person legally responsible for the use of, or using the motor
vehicle with the consent, express or implied, of the named
insured. . . ." (205 Cal.App.2d at p. 138.) The policy contained a restrictive endorsement that the insurance afforded
by the policy would not apply while the insured vehicle was
being operated by a person under the age of 25 years. The
court noted that the two provisions were in direct conflict

with one another, and held the restrictive endorsement void. The court concluded, ''Mere acceptance by the named insured of a policy of automobile liability insurance containing an endorsement making the coverage inapplicable during operation of the motor vehicle by a person under 25 years of age does not come within what the Legislature contemplated as a *waiver* by *supplemental agreement* of *uninsured motorist coverage.*'' (205 Cal.App.2d at p. 138.)

In 1961 (Stats. 1961, ch. 1189, § 2, p. 2921), section 11580.2 was revised, and the language of the provision providing for the deletion of coverage was revised to read as it presently does (see fn. 1, *supra*). The insurer and the named insured concededly agreed in writing to the subject matter of the endorsement in question. The endorsement, however, does not meet other criteria suggested in *Hendricks,* which appear to be equally pertinent to the proviso as redrafted. The court stated, ''Further, we believe an express, not implied, waiver is required; the Legislature intended that when the named insured did execute such a waiver that it would clearly and specifically refer to the subject matter (uninsured motorist coverage) with which it was concerned. There was no such express waiver by 'supplemental agreement' in the instant case.'' (*Id.,* at pp. 138-139.) Here the endorsement does not specifically mention uninsured motorist coverage. It does refer to ''such insurance as is afforded by this policy,'' but the exclusion does not purport to apply to all uninsured motorist coverage, nor even to all uninsured motorist coverage for the named relative. The exclusion, if applicable, applies only to such uninsured motorist liability as might occur under the circumstances set forth in the endorsement. On this score the endorsement conflicts with a second pronouncement in *Hendricks.* The court noted, ''It is true that plaintiffs were not parties to the insurance contract but they are clearly members of a class for whom the benefits of the Uninsured Motorist Law are intended to apply. Defendant argues that since uninsured motorist coverage may be waived *in toto* it may be waived in part. Nowhere in the law is there any provision for waiving of coverage based upon age classifications or on the basis of other nonpreferred risks. The only permissible exclusion is the one expressly provided for in the statute under which the insurer and the insured may by supplemental agreement expressly waive application of the statute.'' (*Id.,* at p. 139.) This second principle was referred to with approval in *Mission Ins. Co.* v. *Brown, supra.* There the court

ruled that an attempt to limit the application of the uninsured motorist coverage to a smaller geographical area than that provided in the liability coverage was void because it was contrary to public policy. (63 Cal.2d at p. 510.) The court concluded, "The statute clearly does not contemplate a piecemeal whittling away of liability, either territorially or under certain driving conditions, for injuries caused by uninsured motorists." (*Id.*, at p. 511.)

In *Costa* v. *St. Paul etc. Ins. Co.* (1964) 228 Cal.App.2d 651 [39 Cal.Rptr. 774], two insurers successfully contended in the trial court that because of the syntax of the section, as adopted in 1959, the definition of "insured," which referred to relatives in the same manner as the present statute, was not intended to extend coverage to those fitting the description, but was a reference to the person who could waive the coverage. The court on appeal pointed out that such construction was absurd, that it would unduly restrict and conflict with other provisions concerning the extent of the coverage, and that it was an obvious error of the draftsman. The judgment was reversed and the court observed, "Thus coverage of the two sons was required by statute, and was not a voluntary or gratuitous act of the insurers." (228 Cal.App.2d at p. 654.) So here the coverage claimed by the plaintiffs is derived from the statute and not merely from the terms of the policy of insurance. Any deletion must satisfy the terms set forth by the Legislature.

In *Lopez* v. *State Farm Fire & Cas. Co., supra,* the policy purported to exclude from uninsured motorist coverage a relative, as otherwise defined in the statute, if the relative or his spouse owned a private passenger automobile. The court ruled, "The statute expresses the public policy of this state requiring uninsured motorist coverage. Such coverage may be omitted from a policy only upon written agreement of insured and insurer, and mere acceptance of a liability policy with terms more restrictive than the statute is not to be deemed a waiver of the statutory coverage (*Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508 . . . ; *Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133 . . . ). It follows that the policy provision excluding from such coverage a family member who owns an automobile cannot prevail." (250 Cal.App.2d at p. 212.) In *Lopez* and the cases upon which it rests there was no written agreement between the insurer and the named insured as in this case. Nevertheless, *Lopez* makes a clear distinction between the type of provision for which the parties are free to

contract, and the type of provision which must strictly comply with a statutory exception. It does so by recognizing that a similar exclusion contained in the medical payment coverage of the policy, a type of insurance not required by law, was effective to bar recovery under those provisions by a relative who owned an automobile. (*Id.*)

It should also be noted that the provisions of the statute expressly extend the uninsured motorist coverage to the named insured, the spouse of the named insured and the qualified relatives of either ''while occupants of a motor vehicle or otherwise.'' That language ''means what it says.'' (*Voris* v. *Pacific Indem. Co.* (1963) 213 Cal.App.2d 29, 35 [28 Cal. Rptr. 328].) There is no requirement that the injuries result from the operation or use of the insured vehicle as is the case with ''other persons.''

From the foregoing it is concluded that the endorsement in this case did not serve to deprive the decedent or his heirs of the benefits of the uninsured motorist coverage. First, the endorsement does not particularly mention that coverage.

Second, although it is not necessary in this case to determine that every partial exclusion from such coverage would be void, the fact that a partial exclusion would present a serious conflict between the insurance required by the statute and the insurance offered by the insurer invites an interpretation that the endorsement was not intended to exclude the named relative from the uninsured motorist coverage.

Third, as more particularly noted below, there is statutory authority for, and a rational ground for limiting the personal exclusion to the liability insurance furnished by the policy.

Fourth, and related to the last point, it must be conceded that the named relative and his heirs would be insured for all sums within the policy limits which he or they, as the case might be, would be legally entitled to recover as damages for bodily injury or wrongful death arising out of physical contact of an uninsured motor vehicle with the named relative or with any automobile which he was occupying, so long as the named relative was not operating the latter automobile. The rational ground for the exclusion is that the driving record of the excluded person is so poor that the insurer does not wish to risk the exposure. (See *Abbott* v. *Interinsurance Exchange* (1968) 260 Cal.App.2d 528, 530 [67 Cal.Rptr. 220]; and *Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497, 500, fn. 1 [38 Cal.Rptr. 77].) Theoretically this objection is of

little relevance under the uninsured motorist coverage, because if the named person's negligence contributes to the accident, he would be barred from recovering legal damages by his contributory negligence, and if he is not negligent there is no reason to interfere with the statutory policy. It may be conceded that the chance of exposure to claims under the uninsured motorist coverage is increased with a known negligent operator. Nevertheless, the risks are not increased to the extent that they are under the liability coverage.

Fifth, if the insurer's contention is sustained there is a further inequity lurking in the wings. If the named insured, the spouse of the named insured, or any other qualified relative is riding in any automobile operated by the named relative, the former's right to uninsured motorist insurance protection would be suspended. This would lead to the absurd result that in the event of collision with a negligently operated automobile, the passengers if injured would recover damages, regardless of the named relative's contributory negligence, if the operator or owner of the other automobile had insurance or was solvent. On the other hand, if the other vehicle were an ''uninsured motor vehicle,'' the innocent passengers would be deprived of the uninsured motorist's insurance protection which the statute requires. The principles set forth above demonstrate that such a ''whittling away of liability'' should not be countenanced.

In support of the judgment of the trial court the insurer relies upon section 1644 of the Civil Code which provides: ''The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.'' (See also *Travelers Indem. Co.* v. *Kowalski* (1965) 233 Cal.App.2d 607, 609-610 [43 Cal.Rptr. 843]; and *Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 809-810 [26 Cal.Rptr. 231].)

The insurer points out that the words ''such insurance as is afforded by this policy'' on their face apply to all and any insurance underwritten in the policy. Similarly the words ''any claim'' and ''any automobile'' are broad enough to include any and all claims under any part of the policy if such claim arises while any automobile is being operated by the named relative. (See *Weatherford* v. *Northwestern etc. Ins. Co., supra,* 239 Cal.App.2d 567, 570-571.) These views may be sound if the clause is viewed in a vacuum. In *Pacific*

*Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], the court reviewed the "plain language" rule as it had been applied to exclude any extrinsic evidence which would contradict the lower court's interpretation of the words above. The court observed, "A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained.

"Some courts have expressed the opinion that contractual obligations are created by the mere use of certain words whether or not there was any intention to incur such obligations. Under this view, contractual obligations flow, not from the intention of the parties but from the fact that they used certain magic words. Evidence of the parties' intention therefore becomes irrelevant.

█ "In this state, however, the intention of the parties as expressed in the contract is the source of contractual rights and duties. A court must ascertain and give effect to this intention by determining what the parties meant by the words they used. Accordingly, the exclusion of relevant, extrinsic, evidence to explain the meaning of a written instrument could be justified only if it were feasible to determine the meaning the parties gave to the words from the instrument alone.

"If words had absolute and constant referents, it might be possible to discover contractual intention in the words themselves and in the manner in which they were arranged. Words, however, do not have absolute and constant referents. 'A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry, . . .' (*Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 195 . . . )  █  The meaning of particular words or groups of words varies with the '. . . verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges). . . . A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.' (Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161, 187.) Accordingly, the meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances

°

that reveal the sense in which the writer used the words.
. . .' '' (69 Cal.2d at pp. 37-39.)

In this case the words of the endorsement must be considered in the light of the policy provisions, and the statutes regulating the issuance and delivery of such policies in this state. ▮ Section 11580.2 has no provision authorizing the exclusion of any particular person who would otherwise come within the protection of the insurance required by that section. Therefore, the cases which recognize the right of the insurer to delete the whole of the coverage required by the statute are not authority for sustaining a partial exclusion. (See *Holland* v. *Universal Underwriters Ins. Co., supra,* 270 Cal.App.2d 417, 419-421; *Myers* v. *National Auto. & Cas. Ins. Co., supra,* 252 Cal.App.2d 599, 603; and *Weatherford* v. *Northwestern etc. Ins. Co., supra,* 239 Cal.App.2d 567, 569-572.)

Section 11580.1, however, as added in 1963 (Stats. 1963, ch. 1259, § 1, p. 2780) and amended in 1965 (Stats. 1965, ch. 1968, § 1, p. 4496) provided in part, '' (e) Notwithstanding the foregoing subdivisions, the insurer and any named insured may, by the terms of such policy or by a separate writing, agree that coverage under the policy shall not apply while said motor vehicles are being used by a natural person or persons designated by name. Such agreement by any named insured shall be binding upon every insured to whom such policy applies.'' The ''foregoing subdivisions'' have nothing to do with the uninsured motorist insurance which had already been required since 1959 by the next succeeding section of the code. The subdivisions referred to require minimum limits of liability insurance coverage (subd. (a)), designation of the motor vehicles to which coverage is intended to be granted (subd. (b)), designation of the use of such motor vehicles with respect to which coverage is not intended to be granted (subd. (c)), and a provision covering permissive users (subd. (d)). The exclusion contemplated by subdivision (e) appears to be directed to the insurance covering ''liability arising out of the ownership, maintenance or use of any motor vehicle,'' and not the insured's right to the protection afforded by uninsured motorist's insurance. (See *Abbott* v. *Interinsurance Exchange, supra,* 260 Cal.App.2d 528, 530; and *Bohrn* v. *State Farm etc. Ins. Co., supra,* 226 Cal.App.2d 497, 500, fn. 1, and 504-505.) It is reasonable to construe the endorsement as intended to furnish the exclusion permitted by subdivision (e).

The exclusion, as authorized for liability insurance, did not defeat the statutory policy set forth in the provisions of section 16451 of the Vehicle Code (formerly § 415), as interpreted in *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359]. In *Abbott* v. *Interinsurance Exchange, supra,* the court ruled that an exclusion authorized under subdivision (e) of section 11580.1 would not relieve the insurer of liability to a third person for the negligence of the excluded person as a permittee of the named insured. The clause was interpreted to relieve the insurer of the obligation to defend the named insured, and to obligate the named insured to reimburse the insurer for any amount the insurer paid in satisfaction of the insured's liability. (260 Cal.App.2d at pp. 531-532 and 538.)[2]

If the exclusion, authorized by section 11580.1, it not being a deletion as contemplated by section 11580.2, can only be effective as between the insurer and the named insured, it should not affect the insurance which the statute has commanded shall be furnished a qualified relative.

In the light of these circumstances it was error to construe the endorsement as excluding the decedent and his heirs from the coverage required to be furnished qualified relatives under section 11580.2.

The foregoing conclusion makes it unnecessary to determine whether the words "any automobile" as used in the endorsement included the motorcycle which the named relative was operating when he suffered the injuries which resulted in his death. *Voris* v. *Pacific Indem. Co. supra,* discussed a similar question and concluded that a liberal construction of coverage in the light of the provisions of section 11580.2 required an interpretation which included a motorcycle in the term automobile which it equated with the term motor vehicle (see Veh. Code, §§ 400, 415 and 670) because the statute, adopted but not yet effective, referred to a motor vehicle. (See 213 Cal.App.2d at pp. 30-34.) On the other hand, in this case, as has been noted above, the endorsement, because it limits coverage, is to be strictly construed, as distinguished from the contrary rule which was applicable in *Voris*. The uncertainty does add strength to the conclusion that the endorsement does not satisfy the statutory requirements for deleting the unin-

---

[2]By amendment of section 11580.1 adopted in 1968 (Stats. 1968, ch. 1314, § 2, pp. 2482-2483), the Legislature has apparently attempted to make any permitted exclusion binding as to third party claimants. No opinion is expressed as to the validity or construction of those amendments.

sured motorist coverage extended to qualified relatives by the statute.

So far as appears from the record, there remains for arbitration the question whether plaintiffs are legally entitled to recover damages from the uninsured motorist and if so the amount thereof. (See *Costa* v. *St. Paul Ins. Co., supra,* 228 Cal.App.2d 651, 654; and cf. *Farmers Ins. Exchange* v. *Ruiz* (1967) 250 Cal.App.2d 741, 744-745 [59 Cal.Rptr. 13]; and *Voris* v. *Pacific Indem. Co., supra,* 213 Cal.App.2d 29, 35.)

The judgment is reversed with directions to enter judgment in accordance with the views herein expressed.

Molinari, P. J., and Elkington, J., concurred.