340 So.2d 603 (1976)
Robert L. HENSLEY
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY.
No. 10961.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
Rehearing Denied December 20, 1976.
Writ Refused February 18, 1977.
*604 John R. Olds, Baton Rouge, for plaintiff-appellant.
David W. Robinson, Baton Rouge, for defendant-appellee.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This appeal is from a Judgment of the Trial Court sustaining defendant's peremptory exception of no cause of action. From this judgment, plaintiff has appealed.
According to plaintiff's petition, he was involved in a vehicular accident when the second car in front of him stopped abruptly at an intersection apparently for the purpose of making a left turn. The automobile in front of plaintiff was able to stop in time to avoid hitting the automobile which had stopped abruptly, but plaintiff who was behind both cars on a motorcycle ran into the rear of the automobile in front of him resulting in injuries to his person.
Plaintiff's petition alleges that the cause of the accident was not the car immediately in front of him but was the unidentified vehicle in front of that car which stopped abruptly to make a turn. Plaintiff has sued his own insurance company for his damages alleging that the unidentified vehicle is an uninsured vehicle within the meaning of his policy and LSA-R.S. 22:1406. LSA-R.S. 22:1406 D(1)(a) provides in part:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; . . ."
The pertinent portion of plaintiff's insurance policy was offered into evidence by stipulation. Said policy defines an uninsured automobile in two ways; first, as an automobile which does not have bodily injury *605 liability insurance in at least the amounts specified by the financial responsibility law of the state, and secondly, as a hit and run automobile. A hit and run automobile is defined in the policy as "an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, . . .."
The defendant filed a peremptory exception of no cause of action contending that since there was no physical contact between plaintiff's automobile and the alleged uninsured motorist's automobile, no cause of action had been stated against defendant under its policy of insurance.
Appellant argues that the requirement of physical contact in defining a hit and run as uninsured is restrictive of the rights granted by LSA-R.S. 22:1406, and thus invalid. Appellee counters by arguing that similar clauses have been upheld, citing Collins v. New Orleans Public Service, Inc., 234 So.2d 270 (La.App. 4th Cir. 1970), writ refused, 256 La. 375, 236 So.2d 503 (1970).
In deciding the validity of the exception of no cause of action, evidence is not admissible, LSA-C.C.P. art. 931, though once admitted without objection, the pleadings are considered enlarged. Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592 (1948). The Court must take the allegations of the petition as true, Ruddock Orleans Cypress Co. v. DeLuppe 119 La. 952, 44 So. 794 (1907), and the exception must be overruled unless the allegations exclude every possible hypothesis of admissible facts other than those negativing plaintiff's right to recover. Stanley v. Missouri Pac. R. Co., 179 So.2d 490 (La.App. 3rd Cir. 1965). Even if it can be shown that even though plaintiff can prove every fact alleged in his petition he still cannot recover as a matter of law, the exception must be sustained. Black v. American Mut. Liability Ins. Co., 37 So.2d 63 (La.App. 1st Cir. 1948).
As we interpret Collins v. New Orleans Public Service, Inc., supra, and as approved by the Louisiana Supreme Court in the refusal of writs with the notation "on the facts found by the Court of Appeal, there is no error of law in its judgment", the plaintiff must prove one of two elements to be successful in his claim for uninsured motorist coverage, i.e. (1) that there was physical contact under the "hit and run" definition of the insurance policy or (2) the identity of the operator of the mystery automobile or the mystery vehicle. Since plaintiff admits that there was no physical contact, and that he does not know the identity of the operator of the mystery automobile, we agree that he has not stated a cause of action.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All cost of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.
LOTTINGER, Judge (concurring).
I voted with the majority in affirming the Trial Court, ultimately authoring the majority opinion, because of the holding of Collins v. New Orleans Public Service, Inc., 234 So.2d 270 (La.App. 4th Cir. 1970) and its approval by our Supreme Court by the refusal of writs at 256 La. 375, 236 So.2d 503 (1970). However, with all due respect to my Brethren on both the Supreme Court and the Court of Appeal, I cannot agree with Collins and thus file this concurring opinion.
The uninsured motorist law is found at LSA-R.S. 22:1406 D(1)(a) and provides:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from *606 owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer." (emphasis supplied).
In discussing the reasons behind the uninsured motorist statute, our brethren on the Third Circuit in Elledge v. Warren, 263 So.2d 912, 916 (La.App. 3rd Cir. 1972) said:
"By the end of the 1968, forty-six states had legislation requiring insurance companies to include uninsured motorist coverage (unless specifically waived) in all liability policies issued or delivered by an insurer licensed in the state, upon any motor vehicle principally used or garaged in the State. * * *.
"In the light of the history of this legislation as reported by the cited authorities, we find it appropriate to review our appreciation of our own statute.
"There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA-C.C. Art. 2315. This created a class of injured people in our state who were left without recourse and who, without some form of relief, might become wards of the state. Insurance plans (such as the financial responsibility law) oriented towards coercing motorists to purchase insurance or removing them from the highways if they did not, proved ineffective. Other plans had to be developed.
"In an effort to forestall plans distasteful to itself, the insurance industry set forth a plan of compensation for the innocent victim of the uninsured motorists. In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobile and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interestthe automobile insurers. Therefore, our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.
"The evil and the injuries existed. By the terms of our statute, whenever evil perpetrates itself upon a policy holder availing himself of uninsured motorist coverage (or insureds under his policy), he is to be compensated for his injuries. In Booth v. Freeman's Fund Insurance Company, 253 La. 521, 218 So.2d 580, 583 (1969), our Supreme Court concluded `that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists.' See also Valdez v. Federal Mutual Insurance Company, 272 Cal. App.2d 223, 77 Cal.Rptr. 411, 413 (1969). `. . . Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own.'"
It is obvious that the purpose of Louisiana's uninsured motorist statute is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles * * *."
There is no legislative mandate or expression of intention found in this statute that can lead one to reasonably believe that the insured must place himself in a position to obtain a judgment against the wrongdoer. The above quoted terminology has been interpreted to mean that the insured establish legal liability on the part of the uninsured, and this requires that the insured only *607 prove the negligence of the uninsured, the insured's freedom from contributory negligence and the resulting damages. It has been further stated that no provision either by statute or in the policy contract requires that the insured establish his claim by judgment. Booth v. Fireman's Fund Ins. Co., 197 So.2d 352 (La.App. 2nd Cir. 1967).
The statute in question does attempt to define an "uninsured motor vehicle", but only as to when the insurer is unable to pay or coverage is less than the damages. LSA-R.S. 22:1406 D(2). Other than the language contained in LSA-R.S. 22:1406 D(6) which describes certain evidence which shall be admissible as prima facie proof of no insurance, i.e. affidavit by owner of no insurance, affidavit by Casualty and Surety Division of no insurance and any evidence or any admissible evidence showing owner or operator a resident or citizen of a foreign country or a non-resident or not a citizen of Louisiana in conjunction with an affidavit of the Casualty and Surety Division of no insurance, which was amended into the statute by the legislature for the obvious purpose of side stepping the "heresay rule", there is no other attempt to define an uninsured or underinsured.
But more important than the lack of any express definition of an uninsured, there is no mandate nor express intention by the legislature that the identity of an uninsured or the uninsured motor vehicle be absolutely necessary for the successful prosecution of a claim.
Under Booth, [253 La. 521, 218 So.2d 580 (1968)] the plaintiff must show that he is "legally entitled to recover damages" that is, that the other car was at fault and he was not. There is no mention made in Booth that he identify the other driver, owner or vehicle, for to do this he could then get a judgment against the tort feasor, and this he is not required to do. I, therefore, see no restriction in the statute prohibiting the plaintiff from attempting to prove that a mystery car caused the accident.
It was argued in Collins that the physical contact rule as found in the insurance policy was invalid because it went beyond the provisions of the uninsured motorist law. Correctly, however, Collins held that though the hit and run rule with the physical contact provisions did go beyond the statute, it was for the benefit of the insured and thus not void. All that the physical contact rule means is that where there is a hit and run with physical contact the insurer concedes that the offending vehicle is uninsured without any further proof on the part of the insured. Since clauses in insurance contracts cannot be in derogation of the requirements of the uninsured motorist law, Wilkinson v. Fireman's Fund Ins. Co., 298 So.2d 915 (La.App. 3rd Cir. 1974), the hit and run rule with physical contact provisions cannot detract from the rights granted an insured by this statute.
It is obvious to me that though we approve the physical contact rule because it grants an advantage to the insured, and thus cannot be said to be in derogation of the uninsured motorist law, its true intention is an attempt to cloud the issue and restrict the rights of the insured under uninsured motorist coverage. Louisiana Courts have taken a liberal approach to the physical contact rule in approving the chain reaction theory in allowing the insured who was not in direct contact with the uninsured to recover even though the policies generally provide that the physical contact of the hit and run automobile be with the insured or with an automobile the insured is occupying. Springer v. Government Employees Ins. Co., Inc., 311 So.2d 36 (La.App. 4th Cir. 1975).
It is the inclusion of the hit and run clause with its accompanying physical contact mandate that has been misapplied in ascertaining the broad rights granted an insured by the uninsured motorist law. The apparent reasoning for the inclusion of the physical contact rule in the definition of a hit and run vehicle is to avoid as much as possible false or fraudulent claims. It is contended by most insurers that if the requirement for physical contact is disallowed, there will be an onslaught of false claim by negligent drivers who are seeking *608 to recover for their own negligence. This very argument concedes that without the physical contact rule there would be more claims, thus, with the rule less claims and a restriction on the right of the insured.
It seems, however, that the insurers and the proponents of the concept that there must be physical contact lose sight of the fact that the plaintiff must still prove to the satisfaction of the trier of fact that not only was there another vehicle which caused the accident, but that it left the scene of the accident under circumstances which would lead one to the conclusion that it was uninsured.
As the same court that authored the Collins opinion said in Springer v. Government Employees Ins. Co., Inc., supra, "the inference that one who hits and runs is uninsured, especially when further supported by circumstances such as the old age and unkept condition of his car, is not an unreasonable one. An insured driver ordinarily has less reason to flee the scene of an accident than has an uninsured driver (although even an insured driver might flee to avoid serious problems such as a drunk driving charge, or discovery with another's spouse)."
It is certainly then not unreasonable to foresee that a vehicle could run a stop sign, thus causing another vehicle to attempt to avoid a collision and strike a parked car, without ever coming into contact with the offending automobile, and yet the offending driver stops and fully notices what he has done in view of many independent witnesses to the accident, but still leaves the scene. The conclusion, was he drunk, did he have another's spouse with him, was he fearful of a traffic citation, or did he simply not have insurance. As the Florida Supreme Court in Brown v. Progressive Mutual Ins. Co., 249 So.2d 429 (1971) said in discussing the physical contact rule "the only reason for such a requirement is to prove that the accident actually did occur as the claimant may say it did. This is a question of fact to be determined by the jury or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review."
What Collins has forced this court in the majority opinion to do is to deny to the plaintiff the opportunity to prove his claim. I agree that where there is no physical contact the chances of false claims are greater, but I cannot agree that every claim of a miss and run with no physical contact is a false claim. As stated by the Third Circuit in Elledge, the obvious purpose of the uninsured motorist law was to afford coverage to the financially responsible drivers as to that injury caused them by the financially irresponsible people because of their financial irresponsibility and lack of insurance. I cannot agree that it was the intention of the Legislature in enacting the uninsured motorist law to limit the application of this statute to only those situations where you can identify the driver of the automobile or you can identify the automobile. To place such a restriction on the statute defeats its purpose. Those individuals who have no insurance are not going to be inclined to sit around and wait for the traffic accident investigation after the accident has occurred.
Therefore, for the above and foregoing reasons I do not agree with the rationale of Collins, though under the facts it might have been impossible for the plaintiff to convince the trier of fact that the mystery automobile was uninsured. However, because our Supreme Court has refused writs in Collins and apparently approved same, I am compelled though disagreeably to vote with the majority in affirming the Trial Court.