[No. D005558. Fourth Dist., Div. One. Feb. 25, 1988.]

OHIO FARMERS INSURANCE COMPANY, Plaintiff and Appellant, v.
DONALD QUIN, Defendant and Respondent.

1340

**COUNSEL**

Goodheart & Wakcher, Michael R. Goodheart and Thomas R. Woelfel for Plaintiff and Appellant.

Haskins, Nugent, Newnham, Kane & Zvetina, Thomas P. Nugent and Michael H. Fish for Defendant and Respondent.

**OPINION**

**TODD, J.**—Ohio Farmers Insurance Company (Ohio Farmers) appeals a judgment in favor of Donald Quin in a declaratory relief action. The trial court ruled Ohio Farmers was liable for damages caused by a permissive user who was not specifically identified in an exclusionary provision of its policy. The primary issue before us is whether the word "use" in the 1982 version of Insurance Code[1] section 11580.1, subdivision (d)(1), included entrustment.

FACTS

In October 1982, Quin was injured when his bicycle was struck by an automobile driven by Sylvia Chiaravallo. The automobile was owned by Kathleen Sullivan, who was insured by Ohio Farmers. Sullivan's son, Murray Martin, had entrusted the automobile to Chiaravallo. Sullivan's policy contained an endorsement excluding coverage while Martin was "using" the vehicle and defining "use" as "including permitting some other person to operate" the vehicle.[2]

In June 1983, Quin filed a complaint for damages against Chiaravallo, Martin and Sullivan, and Ohio Farmers defended Sullivan under a reservation of rights. In May 1984, Ohio Farmers filed this declaratory relief action. Among other things, the parties stipulated: (1) Sullivan did not know Chiaravallo; (2) Martin had unlimited authority from Sullivan to drive the automobile and allow others to do so, and (3) Chiaravallo would not have been driving the automobile had Martin not entrusted it to her.

The parties stipulated at the trial court the sole issue was whether the endorsement exceeded the scope of permissible automobile insurance exclusions under California law as it existed in 1982. After a court trial in which each side presented expert testimony, the trial court ruled in favor of Quin, concluding "use" did not include entrustment in 1982 and Ohio Farmers' attempt to exclude coverage of Sylvia was improper. In its statement of

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

[2] Sullivan's policy endorsement contained the following language: "It is agreed by the company and myself, a person named as a named insured, that this policy will not insure me or any other person or accrue to my benefit or to any person making claim against me, or to any other person otherwise insured under the terms of the policy when the automobiles insured in this policy *is or are being used* by Murray S. Martin. [¶] I understand that when Murray S. Martin is using the automobile or automobiles insured in the policy, no insurance exists at all, and that '*use*' of an auto means more than driving, including permitting some other person to operate it, or to perform any act in its operation or use for the excluded person or persons. . . ." (Italics added.)

decision, the trial court said: "It is public policy in California that all car insurance policies provide coverage to protect persons injured because of the negligence of a permissive user. *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31; Insurance Code § 11580.1 (b)(4) enacted in 1963 [*sic*]; *Metz* v. *Universal Underwriters Insurance Co.* (1973) 10 Cal.3d 45. Thus § 11580.1 starts from the point of coverage for all permissive users and then creates a narrow exception to the general rule of subsection (d)(l) for a *name designated* natural person or persons in an insurance policy. Under the insurance policy here if Martin had been driving Sullivan's car at the time of the accident there would be no question that the exclusionary endorsement excluded coverage because it expressly designates Martin for exclusion.

"The Court also notes that it must strictly construe a statutory exception to promote the Legislature's objective. See *Valdez* v. *Federal Mutual Insurance Co.* (1969) 272 Cal.App.2d 223, 227. Since it is the objective of § 11580.1 to include coverage extending to all permissive users in all insurance policies, it follows that an insurance policy cannot circumvent the objective of § 11580.1(b)(4) (as plaintiff's endorsement does in this case) by excluding a designated person's use but defining 'use' to include that designated person's entrustment of the car to others, i.e., undesignated permissive users. It follows from this conclusion that § 11580.1(d)(1)'s language 'used or operated by . . .' cannot be construed to include entrustment. To do so would: (a) allow an insurer to exclude coverage for an anonymous class of individuals, which it may not do [*Lovy* v. *State Farm Insurance Co.* (1981) 117 Cal.App.3d 834 (173 Cal.Rptr. 307)], and (b) interpret a statute in a way which creates a conflict between its sections. It is a rule of statutory construction that an interpretation is favored which reconciles what otherwise might be an internal conflict in a statute. *Adams* v. *Howerton* (1982) 673 F.2d 1036, 1040. In 1982, as now, 'use' does not include the act of entrustment.

"In further support of this conclusion, it is significant to note that in 1984 the definitional section of this Insurance Code chapter, § 11580.06 was amended to add subsection (g) as follows: 'The term "use" when applied to a motor vehicle shall only mean operating, maintaining, loading or unloading a motor vehicle.' In light of the problems discussed above which would occur if the Court construes 'use' to constitute entrustment, it seems reasonably clear that the 1984 definition of use merely clarified rather than changed the law.

"Ohio Farmers relies on *Hyer* v. *Interinsurance Exchange* (1926) 77 Cal.App. 343, 347, and *Sutton* v. *Tanger* (1931) 115 Cal.App. 267 to sup-

port its contention that use constitutes entrustment. The reliance is misplaced. *Hyer* has no relevance to the issue here. *Sutton* is distinguishable as a case holding that a person driving with a permittee's permission is an implied permittee of the owner of the vehicle. 115 Cal.App. at 270. It concerns itself with an owner's liability without regard to insurance and construes former Civil Code § 1714.25, now Vehicle Code § 17150, not Insurance Code § 11580.1(d)(1). Section 11580.1(d)(1) involves coverage of the permissive user him/herself.

"Since the purpose and subject matter of Vehicle Code § 17150 and Insurance Code § 11580.1(d)(1) are not the same, plaintiff's argument that *Sutton*'s interpretation of 'operate' should apply to § 11580.1(d)(1) is neither controlling nor persuasive.

"For the above reasons, the Court concludes that Ohio Farmer's attempt to exclude coverage of Sylvia, as a member of the class of persons defined as direct permittees of Martin is invalid. . . ."

## DISCUSSION

Ohio Farmers contends (1) the trial court incorrectly applied canons of insurance policy interpretation to a matter of statutory construction, (2) the 1984 amendment to section 11580.06 adding a definition of "use" that excluded entrustment was a change in the law and thus in 1982 "use" included entrustment, (3) the trial court incorrectly concluded that the interpretation of "use" in *Sutton* v. *Tanger* (1931) 115 Cal.App. 267 [1 P.2d 521], did not apply to section 11580.1, subdivision (d)(1), and (4) Ohio Farmers' concern in excluding entrustment by a named individual is legitimate.

## I

We have reviewed the trial court's statement of decision and are unable to find or discern any improper application of insurance policy interpretation. It is true that at trial Quin cited authorities that hold in interpreting insurance policies: (1) coverage clauses are interpreted broadly to afford the greatest possible extent of coverage, whereas exclusionary clauses are interpreted narrowly; and (2) if two or more interpretations are reasonable, the court must adopt the interpretation favoring coverage. However, Quin—both at trial and here—has relied principally on cases interpreting section 11580.1, especially the public policy argument advanced by the courts in reaching their interpretations of the statute. In any

event, the trial court did not misapply rules of construction regarding insurance policies but rather correctly applied rules of statutory construction to conclude "use" did not include entrustment in 1982.

In 1982, section 11580.1 provided in pertinent part: "(b) Every policy of automobile liability insurance . . . shall contain all of the following provisions:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission, express or implied, and within the scope of such permission . . . .

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(d) Notwithstanding the provisions of paragraph (4) of subdivision (b), . . . the insurer and any named insured may, by the terms of any policy of automobile liability insurance to which subdivision (a) applies, or by a separate writing relating thereto, agree as to either or both of the following limitations, such agreement to be binding upon every insured to whom such policy applies and upon every third party claimant:

"(1) That coverage . . . under such policy shall not apply nor accrue to the benefit of any insured or any third party claimant while any insured motor vehicle is being used or operated by a natural person or persons designated by name. . . ." (Stats. 1981, ch. 36, § 1, pp. 79-81.) Thus the key question is: Did the term "used" in the 1982 version of section 11580.1, subdivision (d)(1) encompass entrustment? We believe it did not.

■      Since 1957, when our Supreme Court issued its decision in *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], the public policy of this state has been that every automobile liability policy, as a matter of law, must cover permissive users, and any provision in the policy excluding them is illegal.[3] (See also *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 145 [23 Cal.Rptr. 592, 373 P.2d 640].)

---

[3] Since September 20, 1963, an insurer can exclude permissive users designated by name. (Stats. 1963, ch. 1259, § 1, p. 2780.)

The *Wildman* court was presented with the question of whether, in light of Vehicle Code section 415, subdivision (a)(2),[4] an insurance company authorized to do business in California could, by restrictive endorsement in a policy, limit coverage to the named insured and his immediate family.[5] At the time of the accident in which Mrs. Wildman was injured, the insured car was being driven by Victoria Villanueva with the permission of the insured. Mrs. Wildman contended the restrictive endorsement was ambiguous and should be construed in her favor. The Supreme Court agreed and held (1) the construction proposed by the insurer would violate Vehicle Code section 415 and (2) Vehicle Code section 415 was intended by the Legislature to be, and is, a part of every motor vehicle liability policy issued by an insurer authorized to do business in the state: "It appears that section 415 [now §§ 16450-16451 of the Veh. Code] must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles. . . . We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 [now § 17150] and 415 of the Vehicle Code. . . . ' . . . The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith.' . . ." (*Wildman* v. *Government Employees' Ins. Co.,* supra, 48 Cal.2d at p. 39, quoting from *Malmgren* v. *Southwestern Auto. Ins. Co.* (1927) 201 Cal. 29, 33, 34 [255 P. 512].)

On the authority of *Wildman* and the public policy it enunciated, California courts consistently have held Vehicle Code section 415 (now §§ 16450

---

[4] Vehicle Code section 415, subdivision (a), (now Veh. Code, §§ 16450-16451) provided at that time: "A 'motor vehicle liability policy,' as used in this code means a policy of liability insurance issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured, which policy shall meet the following requirements:

" . . . . . . . . . . . . . . . . . . . .

"(2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured." (Stats. 1943, ch. 911, § 12, p. 2767.)

[5] The restrictive clause provided in part:

" 'With respect to the insurance for Bodily Injury Liability and Property Damage Liability the unqualified word "insured" includes the named insured, the individual named below, and any member of the insured's immediate family

NO EXCEPTIONS

while using the automobile or legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured.' " (*Wildman, supra,* 48 Cal.2d 31 at p. 34.)

and 16451 of the Veh. Code) must be read into every automobile liability insurance policy issued or delivered in the state.[6] Exclusionary clauses held invalid as contravening the public policy included a garage exclusion (*Exchange Cas. & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833]); a customer exclusion (*American Automobile Ins. Co.* v. *Republic Indemnity Co.* (1959) 52 Cal.2d 507 [341 P.2d 675]); and a military personnel exclusion (*Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152 [331 P.2d 766]).

In 1963, the Legislature added section 11580.1 to the Insurance Code. It provided: "No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this State to the owner of a motor vehicle . . . unless it contains the following provisions:

". . . . . . . . . . . . . . . . . . .

"(d) Provision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied.

"(e) Notwithstanding the foregoing subdivisions, the insurer and any named insured may, by the terms of such policy or by a separate writing, agree that coverage under the policy shall not apply while said motor vehicles are being used by a natural person or persons designated by name. Such agreement by any named insured shall be binding upon every insured to whom such policy applies." (Stats. 1963, ch. 1259, § 1, p. 2780.)[7]

---

[6] Even in the face of legislative amendments, California courts have remained steadfast in their adherence to the public policy espoused in *Wildman, supra.* (See e.g., *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142. Shortly, after *Wildman,* the Legislature amended former Vehicle Code section 415 to define a motor vehicle liability policy as used in that chapter of the Vehicle Code to mean a policy of liability insurance "certified as provided in [Vehicle Code] Section 414 as proof of ability to respond in damages . . . ." (Stats. 1957, ch. 1654, § 1, at p. 3034.) Arguably, this amendment was to clarify that policies generally (as distinguished from policies certified under the Financial Responsibility Laws (Veh. Code, §§ 16000-16560)) were not subject to the requirements of Vehicle Code section 415. But the court in *Interinsurance Exchange* held the amendment did not change or overrule the law enunciated in *Wildman.*

[7] The next relevant legislative change apparently was in response to *Abbott* v. *Interinsurance Exchange* (1968) 260 Cal.App.2d 528 [67 Cal.Rptr. 220] in which the court concluded a *third party claimant* could recover from an insurer that excluded coverage under then section 11580.1, subdivision (e). In 1969, the Legislature amended subdivision (e) to provide agreements between insured and insurer would be binding on all third party claimants as well as

In *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 50 [109 Cal.Rptr. 698, 513 P.2d 922], the Supreme Court explicitly declared that section 11580.1 expressed a public policy requiring coverage of permissive users of insured automobiles. *Metz* invalidated an exclusion for automobiles "while rented to others." The *Metz* court reasoned that the language "while rented to others" speaks "superficially of excluding only a class of automobiles. But . . . the definitive characteristic of the excluded class of vehicles lies in the fact that they are operated by a class of permissive users; hence, in practical effect the exclusion denies coverage to this class of permissive users." (*Id.* at p. 53.) *Metz* held then section 11580.1, subdivision (d)[8] "invalidated provisions which, by defining a class of excluded vehicles in terms of their operation by permissive users, serves effectively to deny coverage to those users." (*Ibid.,* fn. omitted.) Such a clause therefore is ineffective to deny coverage.[9]

The *Metz* court reiterated the public policy position of *Wildman, supra,* and *Interinsurance Exchange, supra*: "We have uniformly held that 'the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others."'" (*Metz, supra,* 10 Cal.3d at p. 53.)

*Lovy* v. *State Farm Insurance Co.* (1981) 117 Cal.App.3d 834 [173 Cal.Rptr. 307] dealt with a policy that purported to exclude coverage while the automobile was used by others under a valid written rental or leased agreement. The *Lovy* court held the exclusion attempted to exclude permissive users—renters—and therefore violated section 11580.1. The *Lovy* court said section 11580.1, a part of the state's financial responsibility law, is to be liberally construed to provide monetary protection for tort victims. (*Lovy, supra,* 117 Cal.App.3d at p. 843.)

Here, Ohio Farmers' expert conceded at trial that an insurer cannot exclude an anonymous class of permissive users and thus a provision

---

named insureds. In 1970, the Legislature added sections 11580.05 and 11580.06 and repealed and reenacted section 11580.1. Section 11580.05 contained a legislative declaration and section 11580.06 set forth definitions. What had been section 11580.1, subdivision (e) became § 11580.1, subdivision (d), and section 11580.1, subdivision (d) became section 11580.1, subdivision (b)(4). (Stats. 1970, ch. 300, §§ 1-4, pp. 572-575.)

[8] Now section 11580.1, subdivision (b)(4).

[9] Also in accord is *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 46 [130 Cal.Rptr. 446], which held that where a policy covered the named insured for all uses, but attempted to limit permissive user coverage to situations where the automobile was being used in the business of the named insured, the attempted limitation was invalid because the law requires that permissive users be covered to the same extent as the name insured.

excluding all friends of Murray S. Martin would be invalid. But by engrafting onto the word "use" the concept of entrustment, Ohio Farmers attempted to do indirectly what it could not do directly—exclude unnamed permissive users. "The right of the insurer to limit its coverage of automobiles, however, does not go so far as to permit the insurer by adroit wording to evade the statutory requirement for coverage of permissive users." (*Metz, supra*, 10 Cal.3d at p. 52.)

Furthermore, the clear language of the policy provision (see fn. 2, *ante*) does not help Ohio Farmers. ■ Since section 11580.1 is part of the state's well-entrenched rule of public policy, any attempt to exclude permissive users of insured automobiles is viewed with disfavor. (*Lovy, supra*, 117 Cal.App.3d at pp. 844-845.) "All ambiguities and doubts must be resolved in favor of coverage . . . . [¶] Given the unchanged public policy and law of this state on the subject, the intention of the parties to the insurance contract is immaterial . . . ." (*Id.* at p. 845.)

■ In addition to public policy concerns, well-established principles of statutory construction lead us to conclude "use" in the 1982 version of section 11580.1, subdivision (d)(1) cannot be construed to include entrustment. ■ First, the favored construction of a statute is one which is consistent with established public policy. Statutes should be construed to avoid conflicts with common law rules. (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 330.) ■ Second, language in one section of a statute should be construed consistently with language of other sections and with the purposes of the entire statutory scheme. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 607-608 [86 Cal.Rptr. 793, 469 P.2d 665].) ■ Third, courts may consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than defeat the statute's purpose and policy. (*Fig Garden Park No. 2 Assn.* v. *Local Agency Formation Com.* (1984) 162 Cal.App.3d 336, 342 [208 Cal.Rptr. 474].) ■ As a statutory exception to the state's policy of providing compensation to innocent victims of motor vehicle accidents, section 11580.1, subdivision (d)(1) should be strictly construed. In *Valdez* v. *Federal Mut. Ins. Co.* (1969) 272 Cal.App.2d 223, 227 [77 Cal.Rptr. 411], the court held the statutory exclusion to uninsured motorist coverage requirements (§ 11580.2) must be strictly construed.

The public policy behind section 11580.1 is clear. To construe "use" to include entrustment would be to allow insurers to exclude a class of permissive users without naming them and decrease the availability of compensation to innocent victims of automobile accidents in direct violation of the

policy. We conclude "use" did not include entrustment in the 1982 version of the statute.

## II

In 1984, the Legislature amended section 11580.06 by adding a definition of "use." The amendment in pertinent part added the following language: "(g) The term 'use' when applied to a motor vehicle shall only mean operating, maintaining, loading, or unloading a motor vehicle." (Stats. 1984, ch. 341, § 3, p. 1621.) This statutory definition of "use" obviously does not include entrustment.

■ Ohio Farmers contends the 1984 amendment constituted a change in the law and therefore the law prior to the effective date of the amendment provided that "use" included entrustment. ■ ■ Ohio Farmers correctly recites the presumption that a new enactment on the same subject indicates a legislative intention to change existing law. But here the Legislature had not previously spoken about the definition of "use." Moreover, even if the presumption has been raised, it can be quickly rebutted. As discussed in part I, *ante,* before the 1984 legislation became effective, "use" in section 11580.1, subdivision (d)(1) did not include entrustment. We agree with Quin the 1984 legislation was a clarification of existing law, not a change. There is nothing in the legislative history to indicate otherwise.

## III

■ Ohio Farmers relies on *Sutton* v. *Tanger* (1931) 115 Cal.App. 267 [1 P.2d 521] to support its basic contention that "use" includes entrustment. The reliance is misplaced.

In *Sutton,* a vehicle owner permitted another to drive. The initial permittee in turn allowed a third person, unknown to the owner, to drive. While the third person was driving, an accident occurred. *Sutton* interpreted former Civil Code section 1714.25, which imposed vicarious liability on the vehicle owner for the negligence of any person "using or operating" the vehicle with the owner's express or implied permission. (*Sutton,* at p. 270.) *Sutton* held the word "operate" in the statute "is sufficient to hold the owner liable for the negligence of a person to whom his permittee has temporarily entrusted the automobile." (*Ibid.)* The *Sutton* court next observed: " 'If the owner chooses to intrust his car to another person, he invests such person, so long as he uses the car, with the same authority in

regard to the management of the car which the owner has. That authority includes the right to select the operator.'" (*Id.* at pp. 270-271.)

It is clear the focus of *Sutton* was on the question of imposing vicarious liability on the owner for the negligence of the "user or operator," not on whether the first permittee was "using or operating" the vehicle. *Sutton* held liability could be imposed only if the negligent driver had the owner's express or implied permission.[10]

Significantly, *Sutton* involved former Civil Code section 1714.25 (now Civ. Code, § 17150) and not section 11580.1. This prevents us from applying *Sutton* here since the two statutes are not in pari materia. Section 11580.1 does not involve the imposition of vicarious liability upon a vehicle owner for the negligence of a permissive user. Rather, section 11580.1 requires insurance coverage for the liability of a permissive user unless the permissive user is specifically excluded by name. In *Jordan* v. *Consolidated Mut. Ins. Co., supra,* 59 Cal.App.3d 26, the court held identical words appearing in the Vehicle Code section and in section 11580.1 are to be construed differently: "We conclude that the numerous cases interpreting the word permission as used in Vehicle Code Section 17150 are not controlling of the interpretation of the word 'permission' as used in Insurance Code section 11580.1 or in the omnibus clause of an automobile liability insurance policy." (*Jordan, supra,* 59 Cal.App.3d at p. 40.)

## IV

Finally, Ohio Farmers contends its concern in excluding entrustment by a named individual is legitimate. It would be if the state's statutory scheme allowed it. ▆▆ Any exclusion not expressly authorized by, or broader than, those stated in section 11580.1 is impermissible and invalid. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Gong* (1984) 162 Cal.App.3d 518, 528 [208 Cal.Rptr. 649].) Since, as we have concluded, section 11580.1 does not permit exclusion of an anonymous class of permissive users, Ohio Farmers' provision cannot and does not exclude Chiaravallo. Whether Ohio Farmers' concern is legitimate, is irrelevant.

We cannot ignore the clearly-adopted policy of the courts of this state since 1957 and the Legislature since 1963: The protection of innocent victims of automobile accidents overrides other factors, such as (1) the sound

---

[10]If anything, *Sutton* in this context supports Quin because Chiaravallo could be an implied permittee of Sullivan.

underwriting principle that an insurer should be able to select and determine its own risks and not be forced to expose itself to known dangerous risks and (2) the freedom of contract, which allows insurer and insured to write the type of policy they desire and to limit its coverage by plain language.

## DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Benke, J., concurred.