[Civ. No. 41981. First Dist., Div. Two. Apr. 10, 1981.]

GEORGE P. LOVY, Plaintiff, Cross-defendant and Appellant, v. STATE FARM INSURANCE COMPANY et al., Defendants, Cross-complainants and Appellants; EMPLOYERS REINSURANCE CORPORATION, Defendant, Cross-defendant and Respondent.

[Civ. No. 43504. First Dist., Div. Two. Apr. 10, 1981.]

GEORGE P. LOVY, Plaintiff, Cross-defendant and Appellant, v. STATE FARM INSURANCE COMPANY, Defendant, Cross-complainant and Appellant; CARRIERS INSURANCE COMPANY, Defendant, Cross-defendant and Appellant; TRUCK INSURANCE EXCHANGE et al., Defendants, Cross-complainant and Respondents.

836

838

## COUNSEL

Cartwright, Sucherman, Slobodin & Fowler, Lowell H. Sucherman and Leonard Sacks for Plaintiff, Cross-defendant and Appellant.

Nagle, Vale, McDowall & Cotter, Vernon V. Vale, Ropers, Majeski, Kohn, Bentley & Wagner, Rogers, Majeski, Kohn, Bentley, Wagner & Kane, and Michael J. Brady for Defendants, Cross-complainants and Appellants and for Defendants, Cross-complainants and Respondents.

R. W. Levy for Defendant, Cross-defendant and Appellant.

Wines, Robinson, Wood & Anderson and Thomas R. Fellows for Defendant, Cross-defendant and Respondent.

OPINION

**TAYLOR, P. J.**—These consolidated appeals raise the question of the type and extent of coverages afforded under eight different insurance policies[1] to Kondrack, the permissive driver of a vehicle rented from Hopkins by the plaintiff, George P. Lovy.[2] For the reasons set forth below, we have concluded that the declaratory judgment in No. 43504 must be reversed, and the summary judgment in No. 41981 affirmed.

The basic underlying facts are not in dispute. So far as here pertinent, on May 25, 1973, Lovy rented a 1973 Honda from Hopkins for a pleasure trip to Yosemite National Park. At the time of the one-car accident on May 27, the Honda was driven by Kondrack with Lovy's permission. Lovy sustained catastrophic injuries, for which a jury in a subsequent separate personal injury action rendered a judgment in favor of Lovy against Kondrack in excess of $1 million. Additional facts will be added as required in our discussion of each policy.

## No. 43504

As the major issues on this appeal pertain to the trial court's findings and conclusions that no coverage was afforded to Hopkins, the named insured, by three of the policies issued by Farmers Group, we turn first to these three policies: 1) Truck Insurance Exchange No. 9464-04-39, a comprehensive liability policy with limits of $500,000; 2) Farmers Insurance Exchange No. 9111-04-39, an automobile dealer's "unitized" policy with limits of $500,000; and 3) Truck Insurance Exchange No. 9372-04-79, an "umbrella" policy with limits of $2 million, which all parties agree afforded coverage only if the above mentioned automobile dealer's policy did so. As indicated above, the trial court found that

---

[1] Two of the policies were issued by Carriers Insurance Company (Carriers) to Hopkins; three were issued to Hopkins by the Farmers Insurance Group (Farmers Group) (which includes one issued by Farmers Insurance Exchange, two by Truck Insurance Exchange, and one by Mid-Century Insurance Company; one by State Farm Insurance (State Farm) to Kondrack and one by Employers Reinsurance Corporation (Employers)) to Hopkins and Allied Auto Rental.

[2] In No. 43504, the declaratory relief action, Lovy and State Farm appeal from the entire judgment; Carriers appeals from the portions of the judgment decreeing that it was obligated to provide coverage and indemnify Kondrack and Hopkins and that none of the Farmers Group policies afforded coverage; in No. 41981, the summary judgment action, Lovy, State Farm and the Farmers Group appeal from the summary judgment in favor of Employers.

each of the above policies afforded no coverage here for a variety of different reasons discussed in detail below.

Preliminarily, we note that in doing so, the trial court did not mention the applicable statute,[3] the 1971 version of Insurance Code section 11580.1 (Stats. 1971, ch. 1564, § 3, pp. 3135-3137). The court below also based its findings and conclusions on the inadmissible postaccident hearsay testimony of Farmers Group that in each policy, the insurer and its insured, Hopkins, intended to exclude coverage for a permissive user of a rental automobile. (*Pepper Industries* v. *Home Ins. Co.* (1977) 67 Cal.App.3d 1012, 1017 [134 Cal.Rptr. 904].)

We turn first to the pertinent parts of Insurance Code section 11580.1, as it read at the time of the May 27, 1973, accident. The statute, a part of this state's financial responsibility law,[4] is to be liberally construed to provide monetary protection for "that ever changing and tragically large group of persons who . . . suffer grave injury" (*Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 51-53 [109 Cal.Rptr. 698, 513 P.2d 922]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 152-153 [23 Cal.Rptr. 592, 373 P.2d 640]).

The statute in clear and unambiguous terms compels all issuers of automobile liability policies to provide coverage for permissive users by stating, so far as here pertinent, that *no policy* of automobile liability insurance *covering liability arising out of the use of any motor vehicle shall be issued* in this state on any motor vehicle principally used in this state *unless it contains the provisions set forth in subdivision (b).*[5]

---

[3] Each of the policies was issued effective July 1, 1972.

[4] The other provisions of the financial responsibility law were originally set forth in former Vehicle Code sections 415 and 16450 (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359]).

[5] "(b) *Every policy* of automobile liability insurance to which subdivision (a) applies *shall contain all of the following* provisions:

"(1) Coverage limits not less than the limits specified in subdivision (a) of Section 16059 of the Vehicle Code.

"(2) Designation by explicit description of, or appropriate reference to, the motor vehicles or class of motor vehicles to which coverage is specifically granted.

"(3) Designation by explicit description of the purposes for which coverage for such motor vehicles is specifically excluded.

"(4) *Provision affording insurance to the named insured* with respect to any motor vehicle covered by such policy, *and to the same extent that insurance* is afforded to the named insured, *to any other person using,* or legally responsible for the use of, *such*

Subdivision (d) provides as follows: "Notwithstanding the provisions of paragraph *(4) of subdivision (b)*, or the provisions of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7, or Article 2 (commencing with Section 17150) of Chapter 1 of Division 9, of the Vehicle Code, *the insurer and any named insured* may, by the terms of any policy of automobile liability insurance to which subdivision (a) applies, or by a separate writing relating thereto, *agree as to either or both of the following limitations*, such agreement to be binding upon every insured to whom such policy applies and upon every third party claimant:

"(1) That coverage under such policy shall not apply nor accrue to the benefit of any insured or any third party claimant while any insured motor vehicle is being used or operated by a natural person or persons designated by name. Such agreement shall remain in force as long as the policy remains in force, and shall apply to any continuation, renewal, or replacement of such policy by the named insured, or reinstatement of such policy within 30 days of any lapse thereof.

"(2) *That with regard to any such policy issued to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing automobiles, coverage shall not apply to any person other than the named insured or his agent or employee, except to the extent that the limits of liability of any other valid* and collectible *insurance available to such person are not equal to the limits of* liability specified in subdivision (a) *of Section 16059 of the Vehicle Code.*" (Italics added.)[6]

■ As the above quoted statutory provisions are part of a well entrenched sound rule of public policy, any attempt to exclude coverage

---

*motor vehicle, provided such use is by the named insured or with his permission,* express or implied, and within the scope of such permission, except that: (i) with regard to insurance afforded for the loading or unloading of any such motor vehicle, the insurance may be limited to apply only to the named insured, a relative of the named insured who is a resident of the named insured's household, a lessee or bailee of the motor vehicle, or an employee of any such person; and (ii) the *insurance* afforded to any person other than the named insured *need not apply to:* (A) any employee with respect to bodily injury sustained by a fellow employee injured in the scope and course of his employment, or (B) *any person,* or to any agent or employee thereof, employed or otherwise *engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing automobiles* with respect to any accident arising out of the maintenance or use of a motor vehicle in connection therewith." (Italics added.)

[6]At the time here pertinent, former Vehicle Code section 16059 provided that no policy was effective unless it provided coverages in specified amounts for specified injuries, death or property damage.

for permissive users of insured automobiles is viewed with disfavor. All ambiguities and doubts must be resolved in favor of coverage (*Metz, supra,* 10 Cal.3d 45; *Interinsurance Exchange, supra,* 58 Cal.2d 142, 152; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, fn. 13 at p. 872 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; *Universal Underwriters Ins. Co.* v. *Gewirtz* (1971) 5 Cal.3d 246 [95 Cal.Rptr. 617, 486 P.2d 145]; *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 133-134 [125 Cal.Rptr. 513]; *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 40-42 [130 Cal.Rptr. 446]; *Pacific Indem. Co.* v. *Transport Indem. Co.* (1978) 81 Cal.App.3d 649, 656-657 [146 Cal.Rptr. 648]). Exclusions must be construed strictly against the insurer (*Phelps* v. *Allstate Ins. Co.* (1980) 106 Cal.App.3d 752, 758-759 [165 Cal.Rptr. 263]).

■ Given the unchanged public policy and law of this state on the subject, the intention of the parties to the insurance contract is immaterial (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142; *City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App. 3d 595 [159 Cal.Rptr. 635]; *Fratis* v. *Fireman's Fund American Ins. Companies* (1976) 56 Cal.App.3d 339, 343-344 [128 Cal.Rptr. 391]; *Home Indemnity Co.* v. *Mission Ins. Co.* (1976) 251 Cal.App.2d 942, fn. 6 at p. 955 [60 Cal.Rptr. 544]; *Malmgren* v. *Southwestern A. Ins. Co.* (1927) 201 Cal. 29, 33-34 [255 P. 512]). *Wint* v. *Fidelity & Casualty Co.* (1973) 9 Cal.3d 257 [107 Cal.Rptr. 175, 507 P.2d 1383, 90 A.L.R.3d 1185],[7] cited for the first time at oral argument is not apposite here, as there, no permissive user of a vehicle was involved. Surely, Farmers Group cannot maintain that the collusive intent of the insurer and the insured can prevent coverage mandated by statute. We agree that the questions before us are purely legal and reject the Farmers Group contention that the trial court's factual determination of the intent issue is relevant and binding on appeal if supported by substantial evidence. In this connection, we hold that the trial court's admission of evidence on the intent of the parties was erroneous as a matter of law.[8] (*Pepper Industries, supra,* 67 Cal.App.3d 1012.)

■ In the light of the above mentioned rules favoring coverage, we proceed to analyze and discuss each of the three Farmers Group policies in detail.

---

[7]The case dealt with business pursuits exclusions in a comprehensive liability policy and in a homeowners' policy.

[8]We also note that the evidence consisted of the postaccident hearsay testimony.

We turn first to Truck Insurance Exchange "Comprehensive Liability Policy" No. 9464-04-39.[9]

The court below concluded that this policy did not cover Kondrack based on its findings, as follows: "45. The Truck comprehensive policy *was designed to protect Hopkins in the event that a lessee* or rentee (pursuant to an agreement with Hopkins) *failed to procure insurance which would protect not only the lessee or rentee, but Hopkins as well.*

"46. *It was the intent of Hopkins and Truck Insurance Exchange that the Truck comprehensive policy would protect Hopkins in the event that a lessee or rentee defaulted on his obligation to procure insurance protecting Hopkins as well as the lessee* or rentee." (Italics added.)

These findings were based on the testimony of Hopkins and a Farmers Group employee (Aballi) that the policy was designed to provide coverage only where there was a gap in insurance coverage, i.e., the rental customer failed to obtain insurance on the leased vehicle.

"47. *In the instant case, there was no default by Lovy or Kondrack* in connection with the procurement of insurance; to the contrary, *Kondrack had two insurance policies available to him* for the circumstances of the May 27, 1973, accident, namely, the insurance coverage through *the State Farm policy* and the insurance coverage through *the Carriers combination automobile policy.*

"48. *Under Endorsement No. 2* of the Truck comprehensive policy, *there is no coverage under the Truck comprehensive policy if the lessee or rentee has procured or has available to him insurance equal to the minimum financial responsibility requirements.*

"49. *It was never the intent of either Hopkins or Truck Insurance Exchange that the Truck comprehensive policy provide any insurance coverage to lessees or rentees.*

"50. *Truck Insurance Exchange collected a premium of only approximately $100 a year for coverage under the Truck comprehensive policy; in view of the large volume of Hopkins' business, this indicates that*

---

[9]Although so labeled on its face, the court below referred to this policy as "the Truck comprehensive policy." We shall use the same designation.

*the intention of Hopkins and Truck Insurance Exchange was that exposure under the Truck comprehensive policy would only come into effect on the rare occasion when there had been a default* on the part of the lessee or rentee in procuring or having available insurance which would protect Hopkins. As stated above, no such event is present in this case." (Italics added.)

Thus, the trial court's conclusion was based on its erroneous assumption that the intent of the parties was controlling, whether or not it was expressed in the policy. We note that if, in fact, the intent of the parties was to provide only "stop-gap" coverage, no express language in the policy so states. Rather, Farmers Group argues that the exclusion is to be gleaned from endorsement 2, discussed below. The courts have frequently reiterated the rule that to be effective, an exclusion clause in a policy must follow precisely the language of the statute (*Phelps* v. *Allstate Ins. Co., supra,* 106 Cal.App.3d 752, at pp. 758-759; *Farmers Ins. Exchange* v. *Teachers Ins. Co.* (1980) 101 Cal.App.3d 804, 810 [161 Cal.Rptr. 738]). We, of course, focus on the trial court's conclusion that the exclusion of lessees or rentees was proper.

Neither Insurance Code section 11580.1, subdivision (d), discussed above, nor the language of the policy permits such an interpretation. As we have previously indicated, the Truck Insurance Exchange comprehensive policy was designated as a comprehensive liability policy with limits of $500,000 for "*liability arising out of the . . . use of an automobile.*" The persons insured were defined, so far as here pertinent, as: "(1) the named insured; . . . (3)(b) *any other person while using . . . a hired automobile with the permission of the named insured, providing his actual operation . . . is within the scope of such permission. . . .*" (Italics added.)[10]

Farmers Group does not assert that Kondrack was not covered under the above quoted terms of the policy but, like the court below, relies on endorsement 2, set forth in full below.[11]

---

[10]The exceptions to the above provisions are not legible in the copy provided to the court below by the insurer. In any event, no argument was made below or on appeal that any of these exceptions are applicable or pertinent to the instant accident.

[11] "LEASED AUTOMOBILE ENDORSEMENT

"IT IS AGREED THAT THE COVERAGES AFFORDED BY THIS POLICY DO NOT APPLY TO AUTOMOBILES WHILE USED BY OTHERS UNDER A VALID WRITTEN RENTAL, OR LEASED AGREEMENT, THE TERMS AND CONDITIONS OF WHICH

Endorsement 2, by its terms, attempts to limit the coverage of the policy as to certain classes of permissive users. On its face, the limitation is invalid since, contrary to the Farmers Group contention, no provision of Insurance Code section 11580.1 expressly or impliedly permits such an exception from the basic requirement of subdivision (b)(4) quoted above, at footnote 5 on page 845.

In *Metz* v. *Universal Underwriters Ins. Co., supra*, 10 Cal.3d 45, one of the exclusions under consideration purported to remove coverage for vehicles "while rented to others" (p. 50), a phrase substantially similar to the language of endorsement 2. After first unanimously reiterating the established public policy of this state requiring coverage for permissive users (pp. 50-51), our Supreme Court rejected the insurer's contention that the phrase "while rented to others," did not exclude a class of users, but a class of automobiles, "namely, those rented to persons other than the named insured," as follows at page 52: "The right of the insurer to limit its coverage of automobiles ... *does not go so far as to permit the insurer by adroit wording* to evade *the statutory requirement for coverage of permissive users.*" (Italics added.)

In doing so, the court discussed *Republic Indem. Co.* v. *Employers Liab. Assur. Corp.* (1968) 267 Cal.App.2d 121 [72 Cal.Rptr. 718]. In *Republic Indemnity*, a policy issued to an automobile repair shop provided that the insurance did not apply ""to any automobile used by the insured for the purpose of loaning to customers"" (*Metz, supra*, 10 Cal.3d, p. 52), which was construed as "a restriction against permissive users such as has been continually held to be violative of public policy" (*Republic Indem., supra*, 267 Cal.App.2d, p. 126, quoted with approval in *Metz, supra*, 10 Cal.3d, at pp. 52-53).

The court further stated that both in *Metz, supra*, and in *Republic Indemnity, supra*, 267 Cal.App.2d 121, "*the policies spoke superficial-*

HAVE BEEN FULLY COMPLIED WITH BY THE RENTER OR LESSEE.
"1. A RENTED AUTOMOBILE MEANS:
"AN AUTOMOBILE OWNED BY THE NAMED INSURED AND FURNISHED FOR THE USE OF A RENTER UNDER A VALID WRITTEN RENTAL AGREEMENT BETWEEN THE RENTER FOR A PERIOD OF LESS THAN TWELVE CONSECUTIVE CALENDAR MONTHS.
"2. A LEASED AUTOMOBILE MEANS:
"AN AUTOMOBILE OWNED BY THE NAMED INSURED AND FURNISHED FOR THE USE OF A LESSEE UNDER A VALID WRITTEN LEASE AGREEMENT BETWEEN THE LESSEE AND THE NAMED INSURED PROVIDING FOR THE EXCLUSIVE USE OF SUCH AUTOMOBILE BY THE LESSEE FOR PERIOD OF MORE THAN TWELVE CONSECUTIVE CALENDAR MONTHS." (Emphasis added.)

*ly of excluding only a class of automobiles. But in both cases the definitive characteristic of the excluded class of vehicles lies in the fact that they are operated by a class of permissive users; hence, in practical effect the exclusion denies coverage to this class of permissive users"* (*Metz, supra*, p. 53; italics added).

The court then held that former Insurance Code section 11580.1, subdivision (d) (i.e., subd. (b)(4) of the 1971 version of the statute here applicable) *"invalidated provisions which, by defining a class of excluded vehicles in terms of their operation by permissive users, serves effectively to deny coverage to those users"* (*Metz, supra*, p. 53; italics added). Such a clause therefore is ineffective to deny coverage. Also in accord is *Jordan* v. *Consolidated Mut. Ins. Co., supra,* 59 Cal.App.3d 26, 46, which held that where a policy covered the named insured for all uses, but attempted to limit permissive user coverage to situations where the automobile was being used in the business of the named insured, the attempted limitation was invalid because the law requires that permissive users be covered to the same extent as the named insured.

The trial court's conclusion that the small amount of the premium paid validates an illegal exclusion was rejected specifically in *Home Indemnity Co.* v. *Mission Ins. Co., supra,* 251 Cal.App.2d 942, footnote 6 at page 955.

Endorsement 2 states that the coverages of the policy do not apply to an automobile used by others under a valid written rental agreement, the terms and conditions of which have been fully complied with by the renter or lessee (See fn. 11 at pp. 847-848 above.)

The terms and conditions of the applicable rental agreement (in which the owner of the vehicle (Hopkins) is referred to as the "lessor" and the rentee (Lovy) is awkwardly referred to as the "renter") are set forth below, so far as pertinent.[12]

---

[12]"1. *Renter will return vehicle* to the place and on the date specified on Page 1, or sooner if demanded by Lessor, together with all tires, tools, accessories and equipment, *in the same condition as when received,* ordinary wear and tear excepted provided, however, that *Renter shall be responsible only for the first $50 for loss of or damage to the vehicle resulting from perils insured against under standard automobile comprehensive insurance coverage* (not including conversion, embezzlement, or secretion by the Renter or party in possession with Renter's express or implied permission) *if the vehicle is used in accordance with this Agreement and Renter has rejected Full Collision*

As is readily apparent, none of the terms and conditions of the rental agreement state that the renter has the obligation to obtain insurance of any kind. Rather, section 4, (quoted above at fn. 12), implies that the lessor (Hopkins) has the obligation of providing insurance, and states that the lessor is covered by a policy which has limits equal to or in excess of the statutory limits. The record indicates Hopkins' general manager testified that as a matter of custom and usage, Hopkins did not require the renter to carry insurance (except for long-term leases) and that Hopkins did not care whether or not the renter carried insurance. Hopkins' obligation to provide insurance is also consistent with the box on the upper part of the lower left part of the one-page agreement, which states over Lovy's signature that: "This vehicle covered with Full Coverage Collision Protection for which Renter agrees to pay." Left blank next to this is a box stating that "The Renter DoEs

---

*Coverage* on Page 1. Renter shall be responsible only for the first $250 of collision damage to the vehicle....

"3. Lessor shall not be liable for loss of or damage to any property left, stored or transported by Renter or any other person in or upon vehicle either before or after the return thereof to Lessor, whether or not said loss or damage was caused by or related to the negligence of Lessor, its agents, servants or employees. Renter hereby assumes all risk of such loss or damage and waives all claims against Lessor by reason thereof, and Renter hereby agrees to hold Lessor harmless from and to defend and indemnify Lessor against all claims based upon or arising out of such loss or damage.

"4. *Lessor is covered by an automobile insurance policy, a copy of which is available for inspection at the main offices of the Lessor upon request by Renter. Renter agrees to comply with all the terms and conditions of said policy which by reference hereto are incorporated herein as if set forth in full and made a part hereof. Renter is bound by such terms, conditions,* limitations and restrictions, even though all of them may not be outlined in this Rental Agreement. The *policy has limits of coverage equal to or in excess of statutory requirements for property damage and public liability insurance. Renter agrees with the Lessor and the insurance company that all provisions of applicable state statutes or of said policy covering damages for bodily injury which the Renter may be entitled to recover from the owner or operator of an uninsured motor vehicle are hereby waived and are void and of no effect. Any insurance afforded to the Renter under this agreement shall be excess insurance over any other valid and collectible insurance available to the Renter, either as an insured under another policy or otherwise....*

"5. *Renter shall defend, indemnify and hold harmless Lessor from and against any and all losses, liabilities,* damages, injuries, claims, demands, costs and expenses *arising out of or in connection with the possession or use of vehicle during the rental term which are not covered by the insurance provided hereunder* by Lessor, *including but not limited to* any and all claims from or liabilities to third parties which Lessor may incur as a result of or arising out of the abandonment, conversion, secretion, concealment or unauthorized sale of said vehicle by Renter, its driver, agents or employees, or the confiscation of the vehicle by any duly constituted public authority by reason of use of said vehicle in violation of any statute, law, ordinance, regulation, or order of said public authority.

"6. Renter or the driver of vehicle shall in no event be or deemed the agent, servant or employee of Lessor in any manner or for any purpose whatsoever." (Italics added.)

NOT want Full Coverage Collision and accepts full responsibility for all damage to the vehicle up to $250.00 per collision or other incident."

The only other reference to insurance in the rental agreement are the two remaining boxes on the bottom of the agreement stating: "This rental is covered with trip insurance for which the Renter agrees to pay:

"$_____ per day

"$_____ per week

"$_____ per month over and above rental charges.

"By_____ Renter"

The blank below it states:

"Renter does not want trip insurance.

"By_____ " Renter

Neither of these blanks was completed in Lovy's rental agreement.

Thus, our examination of endorsement 2 and Lovy's rental agreement provides no basis for the trial court's construction that endorsement 2 of the policy afforded coverage only if the renter did not obtain insurance as required by the rental agreement. As we read endorsement 2, it provides that any failure of the renter to comply with any of the terms and conditions of the rental agreement will exclude coverage under the comprehensive liability policy.[13]

In view of the above, we can only conclude that the attempted exclusion of coverage to Kondrack found by the trial court was not only contrary to the law of this state but also not based on any language in endorsement 2, the rest of the policy or the rental agreement. Accordingly, we can only conclude that as a matter of law, Truck Insurance Exchange comprehensive liability policy No. 9464-04-39 afforded coverage to Kondrack. We defer to a subsequent portion of this opinion our discussion of whether this coverage was primary or excess.

[13]For example, here Lovy obviously could not and did not comply with some of the other conditions, such as returning the vehicle in the same condition as when it was received (par. 1, quoted above at fn. 12, pp. 849-850).

■ We turn next to Farmers Insurance Exchange policy No. 9111-04-39 with limits of $500,000, the dealer's "unitized policy." As to this policy, the trial court concluded that the coverage of Kondrack was properly excluded pursuant to Insurance Code section 11580.1, subd. (d)(2) (which we have quoted above at page 844) as Hopkins was engaged in some of the eight specifically enumerated business activities for which the statute expressly permits exclusion, namely, "the business of selling, repairing and servicing automobiles."

The court further found that Hopkins also was engaged in the business of renting and leasing automobiles through a rental department. There was no separate rental corporation. The rental department was located in the same building and on the same floor in which the automobile sales operation was conducted by Hopkins, and the rental business was a part of Hopkins' sales operations. The rental department was staffed by a full-time employee of Hopkins who was paid exclusively by Hopkins and who was the person who arranged the May 25, 1973, lease with Lovy.[14] The court further found that in 1973, "the great bulk of Hopkins' income was derived from the business of selling, repairing, and servicing automobiles, and less than 1% of Hopkins' income[15] was derived from the rental of automobiles."

The court further found, so far as pertinent, that the unitized policy provides no insurance coverage to Kondrack for the circumstances of the May 27, 1973, accident. *Neither Farmers nor Hopkins intended*

---

[14]The court's remaining findings on the rental operation are as follows: "15. Hopkins had set up its rental department with the assistance of a corporation known as Allied Auto Rental Association (Allied). Allied arranged for such things as rental agreement forms, key tags, decals, and brochures concerning the rental program.

"16. Allied performed studies of the rental operation so that Hopkins could ascertain the progress of the rental operation.

"17. In addition, Allied represented to Hopkins that Allied could arrange for insurance coverage for the rental operation.

"18. *Allied did arrange for* such *insurance for the rental operation*, placing coverage for the rental operation *through Carriers Insurance Company*.

"19. In 1973, Hopkins had only recently acquired the dealership for the Honda automobile, and one of the primary purposes in setting up the rental department was to introduce the public to the Honda automobile, which was new in the American market, in hopes of increasing and promoting sales of said automobile." (Italics added.)

[15]The record indicates that: 1) the figure on which Hopkins' premium to Farmers was based did not include its income from its short term rental operations; 2) 10 percent of Hopkins' income was derived from its long-term lease operations and the income from these long-term operations was included in the figure on which the premium was based.

that the Farmers unitized policy provide any coverage for the rental operations of Hopkins or for rentees of vehicles owned by Hopkins.

"25. *Hopkins paid no premiums under the Farmers unitized policy* for Hopkins' rental operation. *The premium paid was based upon total sales and servicing operations of Hopkins' business.*[16]

"26. The insuring agreement portion of the Farmers unitized policy defines the term 'insured' as follows:

"'The term "insured" means:

"'(1) The named insured; ....

"'. . . . . . . . . . . . . .

"'(4) Any other person while using an automobile covered by the policy, with the permission of the name insured, *but only if no other valid and collectible liability insurance, either primary or excess,* with limits of liability at least equal to the minimum limits specified by the financial responsibility law ... is available to such person.'

"Kondrack is not an insured under the Farmers unitized policy because he did have other valid and collectible insurance available to him equal to the minimum financial responsibility requirements, ... other valid and collectible insurance was available to Kondrack in the State Farm policy and in the Carriers combination policy" (italics partially added).

Thus, the court's conclusion that the unitized policy afforded no coverage was based on three factors: 1) the intent of Hopkins and Farmers (which, as we have discussed above, is not relevant); 2) the express statutorily permitted exclusion for "selling, repairing and servicing automobiles," and 3) the exclusion of other drivers covered by other insurance from the definition of named insured, quoted above.

Neither the history of the limited exclusions permitted by Insurance Code section 11580.1, subdivision (d)(2) nor its interpretations (or that of the other Ins. Code provisions *in pari materia,* discussed below) support the trial court's conclusion. In its original enactment, the predecessor of the provision (Ins. Code, § 11580.1, former subd. (f), Stats. 1963, ch. 1259, § 1, pp. 2780-2781) permitted the exclusion of

---

[16]As indicated above, the record does not support this finding.

*all permissive users* (other than agents or employees of the named insured) as long as there was other insurance to cover the loss with limits at least equal to the requirements of the financial responsibility law (*Argonaut Ins. Co. v. Transport Indem. Co.* (1972) 6 Cal.3d 496, fn. 4, p. 508 [99 Cal.Rptr. 617, 492 P.2d 673]). Two years later, the statute was amended to limit the permitted exclusions to persons engaged in the eight specifically enumerated activities (Stats. 1965, ch. 1968, § 1, p. 4496; *Metz, supra,* 10 Cal.3d 45, fns. 14 and 15 at p. 57).

Identically worded permissive exclusions limited to the same eight activities are also set forth in Insurance Code section 11580.1, subdivision (b)(4)(ii)(B), (quoted above in fn. 5 on p. 843) and Insurance Code section 11580.9, which deals with the order of coverage when two or more policies cover a loss. As originally enacted, subdivision (a) of section 11580.9 (Stats. 1970, ch. 300, § 7, p. 576) referred to the same eight activities as section 11580.1, subdivision (b)(4)(ii)(B) and subdivision (d)(2). Insurance Code section 11580.9, subdivision (b) provides for a policy affording coverage to a named insured engaged in the business of renting or leasing commercial vehicles or the leasing of a vehicle for a period of six months or longer.[17]

Significantly, each of the eight specifically enumerated activities (selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles) involves a use of the vehicle that occurs over a short period of time, within a limited area, and for a particular and narrow purpose. Over the years, the parallel provisions of Insurance Code section 11580.1, subdivisions (b)(4)(ii)(B) and (d)(2) and Insurance Code section 11580.9, subdivision (a) consistently and uniformly have been narrowly construed (*Atlantic Nat. Ins. Co. v. Armstrong* (1966) 65 Cal.2d 100 [52 Cal.Rptr. 569, 416 P.2d 801]; *Financial Indem. Co. v. Hertz Corp.* (1964) 226 Cal.App.2d 689 [38 Cal.Rptr. 249]; *National Indemnity Co. v. Manley, supra,* 53 Cal.App.3d 126 (decided by Div. Four of this court); *Cal-Farms Ins. Companies v. Firemen's Fund American Ins. Companies* (1972) 25 Cal.App.3d 1063 [102 Cal.Rptr.

---

[17]Presently, Insurance Code section 11580.9, subdivision (a) still provides, so far as pertinent: "Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to *a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles,* then both of the following shall be conclusively presumed: . . . ." (Italics added.)

568]; *Government Employees Ins. Co.* v. *Carrier Ins. Co.* (1975) 45 Cal.App.3d 223 [119 Cal.Rptr. 116]).[18]

The most recent construction by our Supreme Court in *Metz, supra,* 10 Cal.3d 45, involved the application of section 11580.1, former subdivision (f), the predecessor of the here applicable version of section 11580.1, subdivision (d)(2), to the following fact situation: the named insured (National) had leased the vehicle for a 36-month period to Hamlin. The insurer argued (at p. 55) that, in fact, National was engaged in "selling" the car to Hamlin as National's standard form lease was a conditional sales contract. Our Supreme Court noted that the judgment in favor of the plaintiffs against National as the imputed owner in the personal injury action conclusively established that there had been no conditional sale as to the particular leased accident vehicle.[19]

In rejecting the insurer's contention, our Supreme Court, at pages 55-56, relied on the specific terms of the particular contract between National and the lessee of the accident vehicle. The court concluded that National had not been in the business of selling automobiles for the purpose of the exclusion. Similarly, in *National Indemnity Co.* v. *Manley, supra,* 53 Cal.App.3d 126, this court (Div. Four) held that the statutory exclusion did not apply to a rented trailer.

Further illustrations of the purpose of the exclusionary clause of subdivision (d)(2) are *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481 [149 Cal.Rptr. 472]; *Tilley* v. *Truck Ins. Exchange* (1978) 84 Cal.App.3d 263 [148 Cal.Rptr. 520]; and *Travelers Indem. Co.* v. *Royal Indem. Co.* (1969) 275 Cal.App.2d 554 [80 Cal.Rptr. 197]. *Zurich-American, supra,* 85 Cal.App.3d 481, involved an accident which occurred while the permissive user was en route to deliver the accident vehicle after repairing it. The appellate court concluded that this use came within the statutory phrase with respect to

---

[18]We note that courts in other states also have uniformly construed similar provisions in the same narrow fashion and rejected the insurer's attempts to bring within the permitted exclusion for the specifically enumerated activities other nonenumerated activities of the permissive users of rented vehicles. (See cases collected at 93 A.L.R.2d 1047, 1063-1070, 1072-1079; 71 A.L.R.2d 964; 47 A.L.R.2d 556, 565-567.)

[19]Such a judgment would not have been permitted if the lease, in fact, had contemplated a conditional sale, pursuant to Vehicle Code section 17156, as under a sale, National no longer would have been an "owner" within the meaning of the Vehicle Code provision.

insureds engaged in one of the eight enumerated businesses or activities. The court, however, at page 488, refused to follow a literal reading of the statute and held that the fact that the owner of the vehicle happened to be engaged in one of the enumerated businesses could not be used to produce a result not intended by the statute. In *Tilley, supra,* 84 Cal.App.3d 263, the accident vehicle was an automobile loaned to the permissive driver by an automobile repair business for use while the driver's automobile was being repaired. The appellate court held that the policy's exclusion as to "garage customers" was valid pursuant to Insurance Code section 11580.1, subdivision (d)(2). In *Travelers Indemnity, supra,* 275 Cal.App.2d 554, Travelers issued to Feigin an automobile policy that excluded coverage to an "owned automobile while used in the automobile business;" the latter term was defined in terms of the statute. The accident occurred while the vehicle was being road tested by the employee of the dealer to whom Feigin had taken it for repairs. In rejecting Travelers' contention that the automobile was being used "in the automobile business" within the terms of the policy exclusion, the court noted at page 560 that such an exclusion for the particular transaction could not be logically deduced from the language of the policy and also was not sufficiently clear and unambiguous as required by the statute.

In *Great American Ins. Co.* v. *Globe Indem. Co.* (1970) 8 Cal.App.3d 938 [87 Cal.Rptr. 653], the court in rejecting the insurer's contention that a servicer, installer and repairer of two-way radio equipment was within the statutory exclusion, stated, at page 946, that *legislative enactments purporting to modify the public policy requiring coverage of permissive users must be strictly construed.*

The same is true of the parallel provisions of section 11580.9, subdivision (a) where the operative fact is the "use of accident vehicles." (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* 85 Cal. App.3d 481, 488; *Government Employees Ins. Co.* v. *Carriers Ins. Co., supra,* 45 Cal.App.3d 223, p. 228; cf. *National Indemnity Co.* v. *Manley, supra,* 53 Cal.App.3d, p. 131.) Contrary to the Farmers Group contention, the approach of *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, is still the appropriate one: the statute requiring coverage of permissive users is a "sound rule of public policy," and no intention to overturn that policy will be attributed to the Legislature without the most cogent and convincing evidence. The Legislature's continued retention of the same eight narrow types of short-term

activities in the above discussed statutes in the light of the consistent narrow and strict interpretations by the courts, speaks for itself.

In *Cal-Farm Ins. Companies* v. *Fireman's Fund American Ins. Companies, supra,* 25 Cal.App.3d 1063, cited by Farmers Group here, the leasing company's insurer successfully invoked the exclusion of section 11580.9, subdivision (b) to a two-year written lease. The trial court specifically found that the leasing company was engaged in the enumerated businesses since the automobiles were "'usually sold ... under and by means of a lease plan whereby the prospective purchaser took possession of said automobile under a lease pending the completion of said sale'" (p. 1071). The Court of Appeal, in affirming, also noted, at page 1072, that "The *lease was a vehicle* for selling. In *all cases* the *car* was *ultimately sold before the lease* obligations *were terminated.*" (Italics added.)

Here, of course, there is no contention that the short-term rental to Lovy was, in fact, a sale of the vehicle. Rather, Farmers Group attempts to justify the application of the exclusion on the ground that the major portion of Hopkins' business was in the specifically enumerated permissible activities. This contention, of course, overlooks the fact that as to the lease with Lovy for the particular accident vehicle, Hopkins was in the *rental* business, which is not one of the eight enumerated types of activities. We can only conclude that the court erred in applying the narrow exception of section 11580.1, subdivision (d)(2) to a use that arose out of a different and nonenumerated business, the rental of the accident vehicle. In view of this exclusion, we need not discuss in detail the third factor (i.e., exclusion of other drivers covered by other insurers from the definition of named insured, see p. 853 above), on which the trial court based its conclusion of no coverage. We merely note that the trial court's reading of clause 4 of the definitions (quoted above at p. 853) to exclude renters cannot be justified when the policy is read as a whole. The very next page of the policy lists exclusion 5 for automobiles "while rented or leased to others" with certain exceptions not here relevant. Farmers Group has conceded the illegality of exclusion 5. However, paragraph (4) of the definitions of insured cannot logically be read to create indirectly an exclusion which duplicates the admittedly illegal exclusion of rented vehicles by exclusion 5.

We conclude, therefore, that the trial court also erred in concluding that Farmers unitized policy No. 9111-04-39 did not provide coverage on the ground that Hopkins was engaged in one of the eight specific

business activities listed in section 11580.1, subdivision (d)(2).[20] We hold that the unitized policy also afforded coverage to Kondrack and defer to a subsequent portion of this opinion our discussion of whether its coverage was primary or excess.

█ Next, we direct our attention to Truck Insurance Exchange policy No. 9372-04-79, the "umbrella" policy. Farmers Group concedes, and the trial court found, that there would be no coverage pursuant to the provisions of the umbrella policy unless the unitized policy, discussed above, afforded coverage.

The trial court's pertinent findings as to the umbrella policy are set forth below.[21]

In view of the above mentioned concession, we conclude that since the unitized policy affords coverage to its limits, the umbrella policy also does. However, we are constrained to comment briefly on the court's erroneous interpretation of the "conditions" of the umbrella policy and its purported definition of "underlying insurance."

A careful reading indicates that the portion of the conditions of the umbrella policy on which the court relied, set forth below,[22] dealt with

---

[20] In view of this contention, we need not discuss the equal protection and other issues raised by Lovy as to this policy.

[21] "27. The Truck 'umbrella' policy provides no insurance coverage to Kondrack for the circumstances of the May 27, 1973, accident.

"28. The Truck umbrella policy was written as a policy on top of the Farmers unitized policy only.

"29. Under the Truck *umbrella* policy, *the only underlying insurance was the Farmers unitized policy.*

"30. *Neither the State Farm policy nor the Carriers* policies *are underlying insurance'* insofar as the Truck umbrella policy is concerned. .

"31. The Truck *umbrella policy does not provide any coverage to Kondrack* at all *unless the underlying Farmers unitized policy provides coverage* to Kondrack.

"32. *Since the underlying Farmers unitized policy does not provide coverage to Kondrack, there is no coverage afforded to Kondrack by the Truck umbrella policy.*

"33. *Coverage under the Truck umbrella policy for Kondrack is contingent on coverage under the unitized policy for Kondrack.*

"34. Neither Truck Insurance Exchange nor Hopkins intended that the Truck umbrella policy provide any coverage to rentees of automobiles owned by Larry Hopkins Pontiac, Inc." (Italics added.)

[22] "Limit of Liability [¶] The Company shall only be liable for the ultimate net loss in excess of the 'underlying limits' defined as either *(a) the amount recoverable under underlying insurance as set out in the attached schedule, or (b) the retained limit as stated in Item 4 of the Declarations if the occurrence is not covered by such underlying insurance.*" (Italics added.)

*limits* of liability rather than "exclusions," which are set forth in a different portion of the policy. We note that in interpreting the phrase "underlying limits" in the conditions clause of the umbrella policy, the court defined the phrase "underlying limits" of the conditions clause by referring *only* to subdivision (a) and totally ignored subdivision (b). Thus, the court concluded that the "underlying limits" referred to by subdivision (a) meant only the limits of the unitized policy. However, subdivision (b) of the umbrella policy conditions clause contains an alternative definition of "underlying limits," namely, the retained limit (an amount of $10,000, a form of self-insurance) which applies *if the occurrence is not covered by such underlying insurance.* Thus, the insurance afforded by the umbrella policy is excess over: 1) the underlying insurance defined in the policy; *or* 2) the retained limits of $10,000 if the underlying insurance does not cover the occurrence.

We also note that the construction of the conditions clause which results in a conclusion of no coverage is contrary to Insurance Code section 11580.1, subdivision (a), which requires that every policy must contain the provisions set forth in subdivision (b), including affording the same coverage to permissive users as that afforded to the named insured. So far as here pertinent, Insurance Code section 11580.1, subdivision (a), provides: "No policy of automobile liability insurance described in Section 16057 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). However, *none of the requirements of subdivision (b) shall apply* to the insurance afforded under any such policy (1) *to the extent that such insurance exceeds the limits* specified in subdivision (a) of Section 16059 of the Vehicle Code, or (2) *if such policy contains an underlying insurance requirement, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16059 of the Vehicle Code.*"[23] (Italics added.)

Contrary to the contentions of Farmers Group, the circumstances for which clause 2, subdivision (a), quoted above, permits issuance of a policy that does not comply with subdivision (b) are that the policy must: 1) contain an underlying insurance requirement; *or* 2) provide for

[23]As indicated above at page 843, we refer to the 1971 version of the statute here applicable. The limits then specified by former Vehicle Code section 16059 are now specified by Vehicle Code section 16056.

a retained limit of self-insurance equal to, or greater than, the limits required by the Vehicle Code.

The meaning of the phrase "underlying insurance requirement," as used in the statute was defined by this court in *National Indemnity Co. v. Manley, supra*, 53 Cal.App.3d 126, at page 130, as follows: "'Underlying insurance' is *any other insurance purchased by the insured which covers the same losses* and which will be *primarily* liable therefor. (See *Otter v. General Ins. Co.* (1973) 34 Cal.App.3d 940, 945-946, 953 [109 Cal.Rptr. 831].)" (Italics added.)

In *Manley, supra*, the insurer relied on two clauses of its policy to argue that it had met the underlying insurance requirement of the statute. The first stated the insurance afforded by the policy "shall be excess over any other insurance available to the insured." Justice Christian held, at page 131: "The clause does not satisfy the underlying insurance requirement of the statute; rather, it is an attempt to establish that any other insurance which the insured Stevens should obtain would be treated as the underlying insurance."

The second clause on which the insurer relied required that the insured trailer be rented only to persons who had automobile liability insurance. As to this provision, Justice Christian held, at page 131, that it "appears to require underlying insurance coverage," but concluded that it was not operative as a result of Insurance Code section 11580.9. In *Manley, supra*, 53 Cal.App.3d 126, Justice Christian also firmly rejected, at pages 131 and 132, an argument identical to that made by Farmers Group here, namely, that there was no longer a public policy in this state against depriving permissive users of coverage under the policy of an insured owner of a vehicle and we see no need to repeat that language here.

The instant umbrella clause contained neither an underlying insurance requirement[24] nor a retained limit[25] of self-insurance equal to the

---

[24]The statutory minimum at the time of the instant accident and now is $15,000. As indicated above, the retained limit of the umbrella policy was only $10,000.

[25]The reference to self-insurance must be read in conjunction with the requirements for self-insurance set forth in Vehicle Code sections 16052 and 16053 (formerly §§ 16055 and 16056 respectively). Otherwise an automobile liability insurer could completely evade the requirements of Insurance Code section 11580.2, subdivision (b) by providing for a so-called "retained limit of self-insurance" in every policy issued, regardless of the policyholder's ability to respond. Here, of course, there is no contention

Vehicle Code requirements. Thus, the umbrella policy did not meet the requirements of Insurance Code section 11580.1, subdivision (a)(2), quoted above. We conclude, therefore, that the umbrella policy also afforded coverage to Kondrack up to its limits.

As we have concluded that there is coverage under each of the three Farmers Group policies discussed above, we turn briefly to the other policies before resolving the question of primary and excess coverages and duty to defend.

■ The court found, so far as pertinent, that: "Mid-Century Insurance Company had issued a policy entitled 'automobile dealer's special loan car policy' [a daily rental policy], Policy No. 9564-04-39, with Hopkins as named insured and with limits of $100,000 . . . hereafter . . . the 'rental' policy. . . . The *Mid-Century* 'rental' *policy provides no coverage to Kondrack, Hopkins* or anyone else for the . . . May 27, 1973 accident. The Mid-Century 'rental' policy was not designed to apply unless an automobile was rented pursuant to a written Mid-Century Insurance Company rental agreement form. . . . The 1973 Honda automobile rented by Lovy was not rented pursuant to a Mid-Century rental agreement form but was . . . rented pursuant to an Allied Auto Rental Association form. . . . Hopkins never paid any premium . . . to Mid-Century . . . for coverage under the Mid-Century rental policy. . . . Hopkins chose to insure its rental operations through Carriers . . . rather than Mid-Century . . . because the coverage under the Carriers policy was cheaper than coverage under the Mid-Century policy." (Italics added.)

"Allied specifically represented that it could place insurance coverage for the Hopkins rental operations with Carriers . . . and Hopkins consented to the placement of insurance coverage for the rental operations with Carriers. . . . Mid-Century never charged Hopkins any premium for coverage under the Mid-Century rental policy. The Mid-Century rental policy was a policy specifically designed by the Farmers . . .

---

or evidence that Hopkins met the requirements of Vehicle Code sections 16052 and 16053.

Clause 1 of subdivision (b) of Insurance Code section 11580.1 also does not permit the total escape from liability here found by the trial court and claimed by Farmers Group. Clause 1 excuses compliance with the requirement of subdivision (b) to the extent that the automobile liability insurance exceeds the financial responsibility limits specified in subdivision (a) of former Vehicle Code section 16059. Here, the court found and Farmers Group contends that the umbrella policy provided no coverage at all.

Group to be made available to automobile dealers to cover rental operations, if ... automobile dealerships chose to utilize ... coverage.

"The Mid-Century rental policy contains a Paragraph 14 entitled 'Other Insurance—Coverages A and B' [Coverage A ... bodily injury liability ... and Coverage B ... property damage coverage], which provides as follows: 'However, as respects persons other than the named insured and the lessee or renter named in Daily Rental Agreements and Certificates of Insurance issued to form a part of this policy, Coverages *A and B shall not apply if there is other valid and collectible insurance applicable to the same loss covering such other person as a named insured* or as agent or employee of a named insured *under a policy with limits at least equal to the financial responsibility requirements specified in the motor vehicle laws or the state in which the Daily Rental Agreement and Certificate of Insurance is issued.'*" (Italics added.)

"Even if the Mid-Century rental policy had been utilized, there would be no coverage available to Kondrack under the Mid-Century rental policy by reason of Paragraph 14 in light of the fact that Kondrack had other valid and collectible insurance available to him through State Farm and Carriers. . . .

"The *Carriers 'combination policy' does provide coverage to Kondrack and Hopkins.* . . . ▪ The *Carriers 'excess'* policy provides *no coverage to Kondrack* . . . . The Carriers excess policy does not insure a lessee or rentee or a permittee of such lessee or rentee as defined in the Carriers combination policy. . . . The Carriers excess policy specifically contains an underlying insurance requirement, and there was underlying insurance through the Carriers combination policy equal to the minimum requirements of the financial responsibility law.

"The Carriers excess policy, therefore, does not provide coverage to Kondrack, although the *Carriers excess policy does provide coverage to* Carriers' named insured, *Hopkins.*

▪ "The *State Farm* policy *provides coverage* in the amount of $50,000 *to Kondrack* ... [and] . . . . *to Hopkins.*" (Italics added.)

We agree that the Mid-Century Insurance Company policy issued by the Farmers Group afforded no coverage for the reasons stated above by the trial court in its findings.

There has never been any dispute that the State Farm policy affords coverage to Kondrack and that the Carriers' combination auto policy No. ACU-103-1127 with limits of 15/30 covers both Kondrack and Hopkins.

 We turn next to the question of whether the Carriers' excess policy covers both Kondrack and Hopkins or only Hopkins. The Carriers excess policy provides 85/270 limits of coverage for "Excess Loss" defined, so far as pertinent, as sums paid in settlements of losses for which the insured is liable after making deductions for all other insurance, including the policy of the primary insurer. Primary insurance is defined as the policy described by item 3 of the declarations, namely, Carriers' combination auto policy No. ACU-103-1127.

Carriers' excess policy also states conspicuously in capital letters that it does NOT apply to, and does NOT insure any lessee or rentee as defined in the primary policy and its endorsements or any permissive user of any automobile. This exclusion is valid under Insurance Code section 11580.1, subdivision (b)(4), which is quoted above at footnote 5 on page 843. Although section 11580.1, subdivision (b)(4) requires coverage of permissive users, 11580.1, subdivision (a), quoted above at page 859, provides that none of the requirements of subdivision (b) apply to a policy to the extent that its coverage exceeds the 15/30 limits specified by former Vehicle Code section 16059 (presently Veh. Code, § 16056; see fn. 23 at p. 859 above); or if the policy contains an underlying insurance requirement.

Carriers' excess policy applies only in excess of the 15/30 limits required by the Vehicle Code, and condition 2 of the Carriers policy provides that: "It is a condition of this insurance that the primary insurance shall be maintained in full effect during the currency of this insurance." As indicated above, the Carriers' excess policy specifically sets forth that the Carriers 15/30 combination auto policy as the underlying insurance. Accordingly, the Carriers excess policy affords coverage *only to* the named insured *Hopkins* (*National Indemnity* v. *Manley, supra,* 53 Cal.App.3d 126).

 To determine the issue of primary or excess coverage among all of the instant policies that provide coverage to Kondrack, we turn to the

then applicable version of Insurance Code section 11580.9, which is set forth below,[26] so far as pertinent.

The trial court concluded that since Hopkins was engaged in the business of selling, repairing, and servicing, the statutory presumptions of Insurance Code section 11580.9, subdivision (a) became operative, and Carriers' obligation to indemnify under its combination policy was excess, as Kondrack, the operator of the accident vehicle, was afforded "other" (i.e., primary) coverage by his State Farm policy.

However, as we have discussed above, section 11580.9, subdivision (a) is *in pari materia* with section 11580.1, subdivision (d)(2), and under the latter statute, as to the transaction with Lovy, Hopkins was *not* engaged in any of the enumerated businesses. Our conclusion is buttressed further by *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra*, 85 Cal.App.3d 481. As indicated above, in *Zurich-American*, the owner of the accident vehicle was engaged in one of the eight enumerated occupations and the permissive operator, a mechanic, also was engaged in one of the eight occupations. The court rejected the argument of the owner's insurer that under a literal construction of Insurance Code section 11580.9, subdivision (a), its policy afforded no coverage. The court held, at page 488, that the mere fact that the owner happened to be engaged in one of the enumerated businesses could not be used to produce a result not intended by the statute. The court then applied subdivision (a) to conclude that the coverage afforded by the driver's policy was primary coverage, and that afforded by the owner's policy, secondary.

---

[26]"(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed: [¶] (1) *If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary*, and the *insurance* afforded by *any other policy shall be excess.* [¶] (2) If, at the time of loss, the *motor vehicle* is being *operated by any person other than as described in paragraph (1)*, the *insurance afforded* by the policy issued to any person engaged in any of such businesses *shall be excess over all other insurance available to such operator as a named insured or otherwise*" (italics added)....

"(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

Here, of course, since Kondrack is not engaged in one of the enumerated businesses, subdivision (a) does not apply; subdivision (d), quoted above at footnote 26 on page 864, does.

The Truck Insurance Exchange comprehensive liability, the Farmer's unitized, and the Carriers' combination auto policies have no applicable excess provisions as to other insurance and, therefore, as the insurers of the "owned automobile," afford primary coverage in proportion to the respective limits ($500,000; $500,000; and $15,000) of each policy and should prorate the first $1,015,000 of any judgment or settlement. The State Farm policy provides for excess coverage on nonowned automobiles and, therefore is next in order, as to its limits of $50,000. As the Truck Insurance Exchange umbrella policy provides that it is excess over all other valid and collectible insurance, it affords coverage for the remainder up to its limits of $2 million.

As to the duty to defend, all of the policies provide for defense of the insured as to the coverage afforded by the policy. Thus, the Truck Insurance Exchange comprehensive liability, the Farmer's unitized, and the Carriers combination auto policies, as the primary coverage, share the duty of defense of *both* Hopkins and Kondrack. The costs of defense should be prorated in proportion to the amount paid by each insurer in settlement or judgment (*Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791 [129 Cal.Rptr. 47]).

In view of the above, we cannot agree with the trial court's conclusion No. 11 that the provisions of the policies in issue restricting or limiting coverage on Kondrack are clear. To the contrary, the provisions of the policies here in issue present an eloquent argument for the enactment of legislation in this state requiring all insurance policies[27] to be written in terms "clear to the ordinary mind" (see *Travelers Indem. Co.* v. *Royal Indem. Co., supra*, 275 Cal.App.2d 554, at p. 560, quoting from *Osborne* v. *Security Ins. Co.* (1957) 155 Cal.App.2d 201, at p. 207 [318 P.2d 94]). We reiterate that insurance policies should be written in terms that can be understood by ordinary and reasonable consumers instead of the monstrous convoluted legal gibberish present here.

---

[27]We note that legislation of this type recently has been enacted in New York. Section 142-a, subdivision 1 of the New York Insurance Law, effective July 1, 1980, provides, so far as pertinent, that every insurance policy made, issued and delivered in that state "shall be written in a clear and coherent manner; and wherever practicable use words with common and everyday meanings to facilitate readability and to aid the insured or policyholder in understanding the coverage ...."

We conclude that in No. 43504, the judgment must be reversed.

### No. 41981

We turn briefly to No. 41981, the appeal by Lovy, State Farm and the Farmers Group, from the summary judgment in favor of Employers Reinsurance Corporation (Employers),[28] the insurer on the eighth and last policy here in issue.

The Employers policy was issued to Allied, the corporation which assisted Hopkins in setting up its rental department. As explained above, Allied arranged for the insurance for Hopkins' rental operations. (See fn. 14, p. 852 above.) The effective date of the policy issued by Employers to Allied as named insured was November 1, 1972. Pursuant to an endorsement No. 1, as of that date, Hopkins was listed as an "additional insured."

The Employers' policy was an "excess" one, which provided that Employers would indemnify the insured against certain specified losses in excess of the applicable underlying limit of $100,000.[29] The policy provided that coverage was afforded for *"loss sustained by the insured on account of liability imposed upon the insured by law* for damages" (italics added). As an excess policy, the Employers policy was not required to afford "omnibus" coverage for permissive users of vehicles, pursuant to Insurance Code section 11580.1, subdivision (b), quoted above at footnote 5, page 843. As detailed above, the statute mandates coverage only as to those policies for which limits were prescribed by Vehicle Code section 16059.[30]

---

[28]Employers was named as a defendant in Lovy's action for declaratory relief and as a cross-defendant in the cross-complaint for declaratory relief filed by Farmers Group and State Farm. Employers was not a party at the time of trial to the declaratory relief action in No. 43504.

[29]The pertinent language of the policy stated that the insurer *"agrees to indemnify the insured against loss in excess of* the applicable *underlying loss* stated in the schedule" (italics added).

The policy defined "underlying loss" as ". . . *amounts as are actually paid in cash by the insured or* by the insured's underlying insurance carrier, if any, in *settlement* of claims or in satisfaction of judgments. . . ."

The "schedule" for the policy expressly designated the "underlying loss" to be $100,000.

[30]As indicated above, these limits are $15,000, so far as here pertinent. Vehicle Code section 16059, subdivision (a) provides in part: "No policy or bond shall be effective

Although Hopkins was added to the Employers policy by endorsement 1, effective November 1, 1972, the coverage for Hopkins as an "additional insured" was *deleted* from the policy by endorsement 3, dated *March 26, 1973*, and effective November 1, 1972. As the instant accident occurred on May 27, 1973, two months after the date of endorsement 3, we do not have to reach the question of the validity of the retroactive deletion. There can be no question that after March 26, 1973, Hopkins was no longer an "additional insured" on the Employers policy.

The instant record indicates that Lovy's complaint for declaratory relief did not name Allied as a defendant. As to Employers, Lovy alleged that the Employers policy afforded coverage on behalf of Hopkins as owner of the accident vehicle. Subsequently, Lovy conceded that pursuant to Vehicle Code section 17151, the liability of Hopkins as an owner was limited to $15,000.[31]

---

under Section 16057 unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, nor unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, *of not less than fifteen thousand dollars ($15,000) because of bodily injury to* or death of *one person* in any one accident and, subject to such limit for one person . . . ." (Italics added.)

(Vch. Code, § 16057 provides: "*Exemption* may be *established by* filing with the department satisfactory evidence: [¶] (a) That the owner had an automobile liability policy or motor vehicle liability policy or bond in effect at the time of the accident with respect to the driver or the motor vehicle involved in the accident, unless it is established that at the time of the accident the motor vehicle was being operated without the owner's permission, express or implied, or was parked by a driver who had been operating the vehicle without permission. [¶] (b) That the driver of the motor vehicle involved in the accident, if he was not the owner of such motor vehicle, had in effect at the time of the accident an automobile liability policy or motor vehicle liability policy or bond with respect to his operation of motor vehicles not owned by him. [¶] (c) That such liability as may arise from the driver's operation of the motor vehicle involved in the accident is, in the judgment of the department covered by some form of liability insurance or bond. [¶] (d) Any automobile liability policy or bond referred to in this section shall comply with the requirements of Section 16059 of this code and Sections 11580, 11580.1 and 11580.2 of the Insurance Code, but need not contain provisions other than those required by said sections.") (Italics added.)

[31]So far as here pertinent, Vehicle Code section 17151 provides: "(a) The liability of an owner, bailee of an owner, or personal representative of a decedent imposed by this chapter and not arising through the relationship of principal and agent or master and servant *is limited to the amount of fifteen thousand dollars ($15,000)* for the death of or injury to one person in any one accident and, subject to the limit as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident and is limited to the amount of five thousand dollars ($5,000) for damage to property of others in any one accident." (Italics added.)

Contrary to the contentions of Lovy, Farmers Group and State Farm, *National Indemnity Co. v. Manley, supra,* 53 Cal.App.3d 126, is not apposite, as the policy involved in *Manley,* unlike the instant Employers policy, was not an excess one.

■ The major contention on this appeal is that the trial court erred in concluding that the deletion of Hopkins as an additional insured by endorsement 3 was valid and, therefore, the Employers policy afforded no coverage to Hopkins. Lovy, Farmers Group and State Farm argue that endorsement 3 was ineffective, as it did not comply with the 10-day notice requirement of the cancellation provisions of the Employers policy; and that in any event, the provisions of the policy cancellation clause were so ambiguous that there were triable issues of fact as to its meaning and thus no basis for summary judgment in favor of Employers. We do not agree.

The cancellation clause of the Employers policy provided: "This *policy* may be cancelled by the Corporation by mailing to the Insured at the address shown in this policy written notice stating when *not less than 10 days thereafter such cancellation shall be effective.*" (Italics added.) The cancellation clause, by its terms, applied only to a cancellation of the policy and not to the mere deletion of an additional insured. ■ Ordinarily, as used in insurance policies, the term "cancellation" refers to: 1) an abrogation of the entire policy of insurance; or 2) that portion of the policy which remains unperformed on the date of cancellation (*Clauson v. Industrial Indem. Co.* (1966) 241 Cal. App.2d 440 [50 Cal.Rptr. 615]; *Ohio Cas. Ins. Co. v. Northwestern Mut. Ins. Co.* (1971) 17 Cal.App.3d 204 [94 Cal.Rptr. 586]; *Spott Electrical Co. v. Industrial Indem. Co.* (1973) 30 Cal.App.3d 797 [106 Cal.Rptr. 710]; cf. also Ins. Code, §§ 660-679.6). Consistently, the above authorities refer to the "cancellation *of the policy.*" The term cancellation is not used to refer to amendments, adjustments or modifications to any of the specific provisions within the policy. As stated in *Mamula v. McCulloch* (1969) 275 Cal.App.2d 184, at page 197 [79 Cal.Rptr. 571]: "'To "*cancel*" a contract means to *abrogate* so much of it [the contract] as remains unperformed. It differs from "rescission," which means to restore the parties to their former position. The one refers to the state of things at the time of cancellation; the other to the state of things existing when the contract was made.'"[32]

---

[32]Of course, independent of any cancellation provisions, a policy may be cancelled by the express or implied mutual agreement of the insurer and the insured (*Ohio Cas. Ins.*

Endorsement 3 was not a "cancellation" of the policy within the insurance usage of the term discussed above. Endorsement 3 did not purport to abrogate the policy, but only affected a modification of the policy by deleting an additional insured. The date of execution of endorsement 3 and its purpose were established by the uncontroverted declaration of John Pellat.

Lovy, Farmers Group and State Farm argue that Pellat's declaration did not establish proof that Hopkins had notice of the deletion. The record, however, indicates that Pellat's declaration, with its supporting points and authorities, was filed on December 17, 1977. The hearing on the motion for summary judgment was set for and occurred on January 19, 1977. Lovy, Farmers Group and State Farm submitted no counter-affidavits or other evidence to establish that endorsement 3 was a unilateral act on the part of Employers, and made no offer of proof to establish that Hopkins had no knowledge of the deletion. Further, there was no request for a continuance of the hearing for the purpose of adducing counteraffidavits. Thus, there was no factual showing to contradict Employers' showing that the coverage afforded to Hopkins as an additional insured by endorsement 1, subsequently was deleted properly from its policy by endorsement 3. Similary on this appeal, there has been no offer of proof or explanation for the delay. Thus, Employers met its burden of affirmatively showing that there were no triable issues of fact (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 285 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]).

We can only conclude that in No. 41981, the trial court properly entered the summary judgment in favor of Employers.

### DISPOSITION

In No. 43504, the judgment is reversed with directions to the trial court to enter a judgment as follows: the Truck Insurance Exchange comprehensive (No. 9464-04-39), Farmers' unitized (No. 9111-04-39), and the Carriers combination (No. ACA-102-1127) policies afford primary coverage in proportion to the respective limits of each policy ($500,000; $500,000; and $15,000) and should prorate the first $1,015,000 of any judgment or settlement; the State Farm excess policy

---

Co. v.'*Northwestern Mut. Ins. Co., supra,* 17 Cal.App.3d, pp. 208-209; *Spott Electrical Co.* v. *Industrial Indem. Co., supra,* 30 Cal.App.3d p. 806). Nothing of that kind occurred here.

is next in order as to its limits of $50,000; and the Truck Insurance Exchange umbrella policy (No. 9372-04-79) affords coverage for the balance to its limits of $2 million.

The Truck Insurance Exchange comprehensive liability, the Farmers unitized comprehensive liability, and Carriers combination policies as the instruments of primary coverage, share the duty of defense of both Hopkins and Kondrack. The costs of defense are to be prorated in proportion to the amount paid by each insurer. Appellants to recover costs on appeal.

In No. 41981, the summary judgment is affirmed.

Miller, J., and Smith, J., concurred.

Petitions for a rehearing were denied May 8, 1981, and the petitions of appellant State Farm Insurance Company and respondents in No. 43504 for a hearing by the Supreme Court were denied June 3, 1981.